914 P.2d 549 .

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Tari M. EWING, Defendant–Appellant.**

No. 17416.

Intermediate Court of Appeals of Hawai'i.

April 1, 1996.

Thomas Ewing, on the brief, Mililani, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

On August 11, 1993, Defendant–Appellant Tari M. Ewing (Defendant) was orally charged with Prohibited Noise in violation of the Revised Ordinances of Honolulu (ROH) § 41–31.1 (1995),[1] commonly known as the "Boom Box Law." Following a bench trial, the trial court found Defendant guilty as charged, and judgment was entered on August 11, 1993. We affirm.

The following evidence was adduced. On May 23, 1993 at around 4:30 p.m., Officer Edwin Letarte (Officer Letarte) of the Honolulu Police Department was on duty in a supermarket parking lot located "at the intersection of Kailua Road and Hahane Street,[2] ... monitoring traffic." Officer Letarte "heard music from a distance" and determined that it was coming from a blue "Honda," traveling "in [the] Kaneohe direction, approximately forty feet away." The music became louder as the car approached Officer Letarte. The officer observed that "the passenger's side window was down[,]" and the volume of the music was lowered when the occupants in the vehicle saw him, but the sound of the music never ceased. Officer Letarte testified that the blue car was "the only vehicle" in his "line of sight from the time when [he] first observed the vehicle" to the time when he "determined that the music was coming from the vehicle." When it stopped at a red light "at the intersection of Kailua and Hahane," the officer approached the car and informed the occupants of the reason he had stopped them. According to Officer Letarte, Defendant was the driver of the "Honda," and a female passenger was in the front seat.

On cross-examination, the officer maintained that although there were other vehicles behind Defendant, he "could tell that the music was coming from that car just by seeing it." The officer also stated that both the passenger and Defendant asked questions regarding how he had determined the volume level of the music and the distance to be over thirty feet. They also asked Officer Letarte to "give [them] a break." The officer confirmed that the first time he heard the music was when the car was "about forty feet away," and "the closest point" the car came to him was "about fifteen feet." The officer did not use any measuring device to determine the volume level of the music and did not use any instrument to measure his distance from the car.

The defense called the passenger, Victoria Marino (Marino). Marino recalled that she "first saw" the officer when she and Defendant were "about twelve to fifteen feet away" from him. She stated that although she was in the first car stopped at the red light, "[t]here were about three or four" other vehicles behind them playing "lots of music." Marino claimed that the officer was "very rude" and "very intimidating." She denied "turning down" the volume of the music, and explained that she was actually changing "the tape" in the vehicle's stereophonic system (hereinafter "stereo"). Marino testified that she changed tapes from a "reggae"[3] music tape to another kind of dance music tape which was "louder."

Defendant testified that the officer was ten to fifteen feet away from her car, not forty feet as he claimed. She maintained that she and Marino were able to carry on a conversa-

---

1. The police officer incorrectly cited "section (291c–102)31.141" on Defendant's citation for violation of the "Boom Box" ordinance.

2. The intersection is located in the district of Ko'olau Poko on the island of O'ahu.

3. "Reggae" is defined as "popular music of Jamaican origin that combines native styles with elements of rock and soul music and is performed at moderate tempos with the accent of the offbeat." *Merriam Webster's Collegiate Dictionary* 984 (10th ed. 1993).

tion in the car and did not lower the volume of the music when they saw the officer. According to Defendant, music from vehicles behind them was "overpowering [their] music." She asserted that when she called the officer's attention to the other vehicles, the officer told her that "it was [their vehicle]" because "[they] were [in] the first car in line." She denied asking Officer Letarte to "give [her] a break."

After the parties rested, the court found Defendant guilty.

## I.

■ Defendant argues that ROH § 41–31.1 is invalid because it conflicts with the state statute, Hawai'i Revised Statutes (HRS) chapter 342F (1993) and rules promulgated thereunder. HRS chapter 342F regulates "noise pollution" and provides for permit procedures, monitoring and enforcement of regulations, inspection of sites, investigation of complaints, establishment of research, educational and training programs and penalties for violations. Hse.Stand.Comm.Rep. No. 1267, in 1989 House Journal, at 1310. In that connection, the chapter states that the director of the Department of Health may establish rules for the "control of vehicular noise[.]"

§ 342F–31 **Rules; specific.** The director may establish by rule:

(1) The control of vehicular noise; and

(2) Other specific areas for control of excessive noise, thereby allowing for varying conditions.

Penalties for the violation of such vehicular noise control rules are set forth in HRS § 342F–9.[4]

However, under HRS § 342F–20, any county may adopt ordinances for the purpose of noise control so long as the ordinances are not inconsistent with HRS chapter 342F or not governed by any rule adopted by the Department of Health (DOH).

§ 342F–20 **Effect of laws, ordinances, and rules.**

(a) All laws, ordinances, and rules inconsistent with this chapter shall be void and of no effect.

(b) Any county may adopt ordinances and rules governing any matter relating to excessive noise control which is not governed by a rule of the department [of health] adopted pursuant to this chapter; provided that any county ordinance or rule relating to excessive noise control shall be void and of no effect as to any matter regulated by a rule of the department upon the adoption thereof.

Thus, the statutory language of HRS § 342F–20 clearly authorizes any county to adopt ordinances and rules relating to excessive noise control that are not in conflict with HRS chapter 342F or rules adopted by DOH pursuant to that statute.

The ordinance involved here, ROH § 41–31.1, prohibits the use of a device for reproducing sound in or on any public property or any motor vehicle on a public way if the sound produced is audible at a distance of thirty feet from the device:

(a) *It shall be unlawful for any person or* persons *to play, use, operate, or permit to be played, used or operated, any* radio, *tape recorder,* cassette player, *or other machine or device for reproducing sound, if it is located in or on* any of the following:

(1) Any public property, including any public street, highway, building, sidewalk, park or thoroughfare; or

(2) *Any motor vehicle on a public street,* highway, or public space; *and if the sound* generated *is audible at a distance of 30 feet* from the device producing the sound.

(b) Possession by a person or persons of any of the machines or devices enumerated in subsection (a) shall be prima facie evidence that person operates, or

---

4. Hawai'i Revised Statutes (HRS) § 342F–9 (1993) states:

§ 342F–9 **Penalties.** (a) Violation of the vehicular noise control rules adopted by the department pursuant to this chapter shall constitute a violation as defined in section 701–

107 and shall be enforceable by police officers. The fine for this violation shall be not less than $25 nor more than $2,500 for each separate offense. Each day of violation shall constitute a separate offense.

those persons operate, the machine or device.

(Emphases added.) ROH § 41–31.3 (1995) sets forth the penalty to be assessed against persons found in violation of ROH § 41–31.1.[5]

### A.

The "test to determine whether an ordinance conflicts with a statute is whether it prohibits what the statute permits or permits what the statute prohibits." *Waikiki Resort Hotel v. City & County of Honolulu*, 63 Haw. 222, 241, 624 P.2d 1353, 1366 (1981) (citations omitted). In *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 868 P.2d 1193, *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994),[6] the Hawai'i Supreme Court discussed the preemption of a municipal ordinance by a state statute pursuant to HRS § 46–1.5(13) (1993)[7] and adopted the following "comprehensive statutory scheme" test:

> [A] municipal ordinance may be preempted ... if (1) it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state or (2) it conflicts with state law.

*Id.* at 62, 868 P.2d at 1209. A conflict exists if the local ordinance "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." *Id.* at 61, 868 P.2d at 1208 (emphasis omitted) (quoting *Sherwin–Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 16

Cal.Rptr.2d 215, 217–18, 844 P.2d 534, 536–37 (1993)).

Under the comprehensive statutory scheme test, we first examine whether ROH § 41–31.1 covers the same subject matter embraced by HRS chapter 342F or rules promulgated pursuant to that chapter. *See Richardson, supra; In re Application of Anamizu*, 52 Haw. 550, 481 P.2d 116 (1971).

### B.

Nothing in HRS chapter 342F indicates that its provisions would preempt the regulation of machines or devices for reproducing sound encompassed under ROH § 41–31.1. Under HRS § 342F–1, the term "vehicle" means "any device in, upon, or by which any person or property is or may be transported or drawn, including boats and ships." Defendant's vehicle would be included under this definition. However, the chapter does not specifically regulate "vehicular noise" but delegates this task to the rule-making function of the director. HRS § 342F–31. As indicated previously, any county may adopt ordinances regulating "excessive noise control" so long as the matters regulated are not already governed by a department rule or inconsistent with HRS chapter 342F. Under HRS § 342F–1 "excessive noise" is defined as

> the presence of sound as measured by standard testing devices as established by the noise rules adopted by the department of a volume or in quantities and for durations which endangers [sic] human health, welfare or safety, animal life, or property *or which unreasonably interferes with the*

---

5. Revised Ordinances of Honolulu (ROH) § 41–31.3 (1995) mandates the following penalty for an individual found in violation of ROH § 41–31.1:

> [A] fine of $100.00 for the first offense, $500.00 for the second offense within six months of the first offense, and $1,000.00, or forfeiture of the sound system or components of the sound system up to $1,000 in value, or a combination of forfeiture and fine to total $1,000.00 for conviction of the third offense within one year of the first offense.

6. *Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 868 P.2d 1193 (1994) dealt with whether a county ordinance authorizing involuntary lease conversions conflicted with state stat-

utes granting counties power to take private property for public use.

7. HRS § 46–1.5 (1993) delineates the general powers and limitations of the counties, and subsection (13) in particular states that

> [e]ach county shall have the power to enact ordinances deemed necessary to protect health, life, and property, and to preserve the order and security of the county and its inhabitants on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute, provided also that the ordinance does not disclose or express an implied intent that the ordinance shall be exclusive or uniform throughout the State.

*comfortable enjoyment of life and property* in the State or *in such areas of the State as are affected thereby.*

(Emphases added.)

The noise prohibited under ROH § 41–31.1 plainly comes within one of the definitions of "excessive noise" as used in HRS § 342F–20(b). The legislative findings in support of the ordinance explain that the "excessive noise" sought to be prohibited "create[s] a significant threat to public health, safety, and welfare." *See* note 11, *infra.*

### C.

■ Pursuant to HRS § 342–42 (1985),[8] the predecessor of HRS § 342F–31 (1993), DOH adopted administrative rules known as "Title 11, Administrative Rules, Department of Health, Chapter 42, Vehicular Noise Control for Oʻahu" (DOH Rules). These rules establish "maximum sound levels that vehicles shall be allowed to emit when used on trafficways on the island of Oahu [Oʻahu]," DOH Rules § 11–42–1 (1993), and apply "to all vehicles wherever operated on the trafficways on the island of [Oʻahu]." DOH Rules § 11–42–3(a). The "rules are intended to limit such maximum sound levels to those consistent with the physical, mental, and social well-being of the people." DOH Rules

§ 11–42–1. The vehicular noise control rules for Oʻahu became effective November 6, 1981. Chapter 342 was repealed in 1989 and replaced by HRS chapter 342F. 1989 Haw. Sess.L. Act 212, § 8 at 509. However, the rules adopted pursuant to chapter 342 continue in effect until replaced by rules adopted under HRS chapter 342F.[9]

A reading of the rules adopted pursuant to HRS § 342–42(1) indicates that they do not address the type of noise that ROH § 41–31.1 seeks to control. Under the rules, "vehicle" is defined as "any device, or combination of devices, used for or capable of being used for transporting persons or property[,]" and the term includes "automobiles." DOH Rules § 11–42–2. A vehicle is further categorized as being a "light vehicle" or a "heavy vehicle." *See* DOH Rules §§ 11–42–7 and 11–42–8. A "heavy vehicle" is a "vehicle which has a manufacturer's gross vehicular weight rating of ten thousand pounds or greater." DOH Rules § 11–42–2. A "light vehicle" is defined as "a vehicle not specifically identified as a heavy vehicle." *Id.* " 'Operate' means to perform any operation with or on a vehicle or auxiliary device at any time or under any condition of grade, load, acceleration, or deceleration." *Id.* An " 'auxiliary device' means an implement, tool, instrument, appliance, utensil, or contrivance."[10]

---

**8.** HRS chapter 342F on noise pollution, was one of seven HRS chapters enacted in 1989 to replace the former environmental quality law, HRS chapter 342. 1989 Haw.Sess.L. Act 212, § 3 at 461. The individual chapters regulate air, water, noise and solid waste pollution, hazardous waste, underground storage tanks and used oil transport, recycling, and disposal. Hse. Stand.Comm.Rep. No. 1267, in 1989 House Journal, at 1310; Sen.Conf.Comm.Rep. No. 65, in 1989 Senate Journal, at 786.

HRS § 342–42 (1985), first enacted in 1972 and subsequently amended in 1974 and 1978, preceded HRS § 342F–31. 1972 Haw.Sess.L. Act 100, § 1 at 391; 1974 Haw.Sess.L. Act 250, § 3 at 720–21; 1978 Haw.Sess.L. Act 94, § 2 at 132. HRS § 342–42 was the first statute vesting the Department of Health (DOH) director with the authority and discretion to establish rules regulating the control of vehicular noise. HRS § 342–42(1) provided that the DOH director may "[e]stablish by rule or regulation the control of vehicular noise."

**9.** 1989 Haw.Sess.L. Act 212, § 9 at 509 provides that

[r]ules that were adopted under the authority of chapter 342 shall remain in effect until they are replaced by rules adopted under the authority of the respective chapters being enacted in this Act. References in the new chapters to rules shall include rules adopted pursuant to chapter 342 until the rules adopted pursuant to chapter 342 are replaced by rules adopted under the respective new chapters.

**10.** Title 11, Administrative Rules, Department of Health, Chapter 42, Vehicular Noise Control for Oʻahu (DOH Rules) § 11–42–2 defines "auxiliary device" as an "implement, tool, instrument, appliance, utensil, or contrivance." Webster's Dictionary considers the term "implement" synonymous with "tool," "instrument," "appliance" and "utensil":

IMPLEMENT may apply to anything necessary to perform a task (crude stone *implements*) (farm *implements*). TOOL suggests an implement adapted to facilitate a definite kind or stage of work and suggests the need of skill more strongly than IMPLEMENT (a carpenter's *tools*). INSTRUMENT suggests a device capable of delicate or precise work (the den-

*Id.* "Trafficway" includes the area "open to the use of the public for purposes of automotive traffic." *Id.*

It is evident that under the facts here, Defendant was in a "vehicle" on a "trafficway." For purposes of this case, the distinction between heavy and light vehicles is not material. Under the rules, a person is prohibited from operating a heavy or light vehicle, "or any auxiliary device attached to or required for the operation of said vehicle, ... in such a manner that *it* emits noise at levels in excess of the limits" listed in the applicable tables. DOH Rules §§ 11–42–7, 11–42–8 (emphasis added). We believe that because the "noise level tables" are based on factors of vehicle weight and vehicle speed, the prohibited noise emitted from "it" refers to the noise which is inherent in the operation of the vehicle itself.

■ Similarly, the term "auxiliary device" refers to such devices as are necessary for or essential to the operation or function of the vehicle concerned. While not precisely worded, the phrases "attached to" and "required for" plainly modify the phrase "the operation of said vehicle[.]" DOH Rules §§ 11–42–7, 11–42–8. Although a car stereo or other similar device, by itself, could arguably be considered an "appliance" within the broad definition of "auxiliary device," it would not be "attached to or required for the operation of said vehicle[.]" *Id.* A car stereo is not "attached to" the operation of the vehicle, because it is independent of the operation of a vehicle. It is also clear that a car stereo is not "required for" operating a vehicle. In other words, a stereo is not necessary for a vehicle to operate or function or inherent in the operation or functioning of the vehicle involved.

■ HRS chapter 342F and the rules promulgated thereunder are not exclusive of the subject matter sought to be regulated here. ROH § 41–31.1 does not duplicate, contradict, or enter "an area fully occupied by general law, either expressly or by legisla-

tive implication." *Richardson,* 76 Hawai'i at 62, 868 P.2d at 1209. We hold, then, that neither HRS chapter 342F nor the rules promulgated pursuant to HRS § 342–42 for "vehicular noise" extend to sounds reproduced by an automobile's stereo and regulated under ROH § 41–31.1.

II.

A.

■ The ordinance is not void for vagueness. The applicable test is whether the law "give[s] [a] person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful or unlawful conduct." *State v. Sun Na Lee,* 75 Haw. 80, 92, 856 P.2d 1246, 1254 (1993) (internal quotations and citation omitted). The ordinance here is specific and clear. The terms used are susceptible of ordinary understanding. The devices involved are defined as ones "for reproducing sound" and recognizable examples of such devices are set forth in the ordinance. ROH § 41–31.1. Likewise, the areas protected from such devices are specifically set forth. The thirty-foot distance beyond which noise may not be audible is easily ascertainable. *See City of Portland v. Aziz,* 47 Or.App. 937, 615 P.2d 1109, 1113 (1980) (stating that an antinoise ordinance is not void for vagueness, the court upheld an ordinance prohibiting, *inter alia,* unlawful operation of a device designed for sound production or reproduction on public property that produced sound "plainly audible" at a distance of fifty feet or more from any such device); *see also Grayned v. City of Rockford,* 408 U.S. 104, 107–08, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972) (holding that an antinoise statute prohibiting a person, on "grounds adjacent to any building in which school or any class thereof is in session," from willfully making any "noise or diversion which disturbs or tends to disturb the peace or good order of the school session" is not unconstitutionally vague or overbroad) (citation omitted); *City of Farmington v. Wilkins,* 106 N.M. 188, 740

tist's *instruments* ). APPLIANCE refers to a tool or instrument utilizing a power source and suggests portability or temporary attachment (household *appliances* ). UTENSIL applies to

a device used in domestic work or some routine unskilled activity (kitchen *utensils* ).
*Merriam Webster's Collegiate Dictionary* 583.

P.2d 1172, 1173 (Ct.App.) (upholding city ordinances prohibiting any person to create unreasonably loud, disturbing, or unnecessary noise so as to be "detrimental to the repose, life or health of others[,]" as not unconstitutionally vague due to the absence of specific, permissible decibel levels), *cert. denied,* 106 N.M. 174, 740 P.2d 1158 (1987) (citation omitted).

■ For the same reasons, we also conclude that the application of the ordinance would not be subject to arbitrary enforcement or application by the police or a judge or a jury. "Due process of law requires that a penal statute or ordinance state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or it is void for vagueness." *State v. Kameenui,* 69 Haw. 620, 621, 753 P.2d 1250, 1251 (1988) (citing *State v. Bloss,* 64 Haw. 148, 163, 637 P.2d 1117, 1128 (1981), *cert. denied,* 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982)). To reiterate, the ordinance before us is specific, definite, and subject to ordinary understanding, and, thus, would not be susceptible to arbitrary enforcement or application by a police officer or by a judicial trier of fact. *See Sun Na Lee, supra; Kameenui, supra; see also Grayned, supra.* Accordingly, we conclude that the ordinance is not vague and thus, not void.

### B.

■ The statute is not overbroad in the sense that it exceeds the police power granted to the State. Defendant concedes in her brief that "no first amendment rights are implicated" by this ordinance. "Overbreadth occurs if the disputed statute proscribes illegal as well as protected First Amendment conduct." *State v. Kam,* 69 Haw. 483, 487, 748 P.2d 372, 375 (1988) (citation omitted). Here, the ordinance does not regulate the content of the sound from the reproducing device. Where a statute does not proscribe constitutionally protected conduct, no issue of overbreadth arises. *State v. Kahalewai,* 56 Haw. 481, 487, 541 P.2d 1020, 1025 (1975).

■ The police power of the State is broad and extends to the public safety, health, and welfare. *See State v. Lee,* 55 Haw. 505, 513, 523 P.2d 315, 319 (1974) (holding statutes "reasonably related to the preservation of public health, safety, morals or general welfare of the public" are within the State's legitimate exercise of the police power); *see also State v. Lee,* 51 Haw. 516, 465 P.2d 573 (1970); *State v. Diamond Motors, Inc.,* 50 Haw. 33, 429 P.2d 825 (1967). So long as the ordinance is related to these objectives, the ordinance would fall within the scope of the police power. The legislative findings in support of the ordinance indicate that excessive noise "creates a significant threat to the public health, safety, and welfare." *See* Ordinance 90–26.[11] Sound in a public place or area is obviously disseminated to members of the public generally, who are present. The restrictions on the exercise of the police power in curbing sound in public places rest on constitutional limita-

---

11. The legislative history of ROH § 41–31.1, found in Ordinance 90–26, provides in relevant part:

SECTION 1. Legislative Findings and Purpose.

The City and County of Honolulu, having received an increasing number of complaints from the citizens of the City and County concerning noise, and having made certain observations on the subject, hereby finds that:

(a) Excessive noise, when unnecessary to the carrying on of religious, political, civic, or commercial activities, or when not generated in the course of other activity necessary to carrying on of daily life, creates a significant threat to the public health, safety and welfare.

(b) Those noises which are most obnoxious to public health, safety and welfare in the City are those which are loud, boisterous, rau-

cous, unseemly, or which are generated solely for the purpose of entertainment of a person or group of persons without regard to the health, welfare and safety of others who are unable to avoid being subjected to such noises.

(c) Excessive outside noise also threatens the economic viability of businesses in Honolulu, many of which rely upon an open-air atmosphere to attract customers.

(d) Excessive noise threatens our fragile visitor industry by making it difficult or impossible for our visitors to find the quiet, balmy, tropical paradise many of them seek.

(e) There has been an alarming increase in the frequency and volume of noise from the many portable sound reproducing devices available today, such as portable radios, tape recorders, and cassette players.

tions that are not in issue here. As indicated previously, we have concluded that there is no due process violation in terms of vagueness. There is no claim here of any infringement of specific guarantees under the United States or Hawai'i constitutions.[12]

## III.

■ Finally, we hold that there was substantial evidence to support a conviction for prohibited noise under the ordinance. There is no dispute that music was being played on the car stereo. The defense witnesses claim that Officer Letarte was standing ten to fifteen feet away from their automobile when the stereo was playing. The officer, on the other hand, testified that he first heard the music when Defendant's automobile was forty feet away. The estimation of distance is a matter clearly within the permissible opinion of a lay witness. Hawai'i Rules of Evidence (HRE) Rule 701.[13] The court, as the trier of fact, was vested with the discretion to determine the credibility of witnesses, and its ruling implicitly found the officer's testimony to be more credible than that of Defendant and her passenger. The question of credibility and the weight to be given the evidence is for the trier of fact to determine and is not disturbed on appeal. *State v. Gabrillo,* 10 Haw.App. 448, 877 P.2d 891 (1994). The officer testified that the music was audible to him. Sound may be perceived and testified to by a lay witness. HRE Rule 701. No question was raised in the evidence concerning any impairment in the officer's ability to discern sound. Under the circumstances, we find that there was credible evidence of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. *State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455 (1995).

## IV.

The judgment of August 11, 1993 is affirmed.

12. The intent and purpose section of the ordinance states that

[t]here has been an alarming increase in the frequency and volume of noise from the many portable sound reproducing devices available today, such as portable radios, tape recorders, and cassette players.

It is, therefore, the intent of this ordinance to strike an appropriate balance between the right of individuals to obtain information and derive pleasure by listening to radios and other devices, and the right of the public to a peaceful and healthful environment. *It is not the intent of this legislation to interfere unduly with freedom of speech or religion by regulating the initial production or amplification of sound.*

Thus the direct amplification of the human voice or music through the use of "bullhorns" or amplifiers is not regulated hereby.

Ordinance 90–26 (emphasis added).

13. Hawai'i Rules of Evidence Rule 701 states the following:

**Rule 701 Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue.