On December 13, 1995, the appellant, Eugene Edward Duffy, Jr., was charged with violating Ordinance No. 39-045, an antinoise ordinance supplementing and amending § 39-96 of the Mobile City Code (1991), for preaching on the sidewalk in Mobile. He was convicted in the Municipal Court of Mobile, and appealed to the Mobile Circuit Court for a trial de novo. On October 1, 1996, the appellant stipulated to a prima facie violation of the ordinance, but reserved the right to appeal the denial of his Motion to Dismiss based upon the unconstitutionality of the ordinance and its violation of federal law. On appeal, he argues that (1) the ordinance is unconstitutionally overbroad and violates his due process rights because it prohibits amplified speech more broadly than necessary to achieve the governmental interests and because it regulates without reference to time, place, and manner; (2) the ordinance is unconstitutionally vague, and violates his due process rights by proscribing all "loud, unnecessary or unusual noise" and all noise that subjectively "annoys" or "disturbs" police officers; (3) the unbridled discretion of city officials to grant or deny noise permits or variances constitutes an invalid prior restraint on protected speech; and (4) the ordinance, as applied to the appellant, violates his rights to the free exercise of religion as protected by the First Amendment to the United States Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb et seq.
Mobile's antinoise ordinance reads, in pertinent part, as follows:
"I. AMENDMENT
"Sec. 39-96. Noise Nuisance.
 "1) It shall be unlawful for any person to make, continue, or cause to be made or continued, any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of any law enforcement official or other individual of normal sensibilities within the City, or its police jurisdiction. The following acts, among others, are declared to be loud, disturbing and unnecessary noises in violation of this section and a municipal nuisance, but such enumeration shall not be deemed to be exclusive, namely:
 "(a) Radios, phonographs, 'boom boxes,' car stereos, etc. — Generally. The using or operating, or permitting to be played, used or operated any radio receiving set, stereo, 'boom box,' musical instrument, phonograph, sound amplifying equipment or other machine or device for the producing or reproducing of sound either stationary or mobile, in such a manner as to disturb the peace, quiet and comfort of any law enforcement official or other individual of normal sensibilities at any time with a louder volume than is necessary for convenient hearing for the one or more persons who are in the premises, vehicle or immediate vicinity, not to exceed a radius of more than fifty (50) feet, in which such machine or device is operated and who are voluntary listeners thereto; or in such a manner which either: (i) exceeds sixty-two (62) decibels (dbA) at any property line within any residential district of the City or any public street or right-of-way within or bordering upon any residential district within the City during the hours of 10:00 p.m. until 7:00 a.m.; (ii) exceeds seventy (70) decibels (dbA) at any property line within any residential district within the City or any public street or right-of-way within or bordering upon any residential district within the City during the hours of 7:01 a.m. until 9:59 p.m.; or (iii) in such a manner which exceeds eighty (80) decibels (dbA) within any commercial/business district of the City, or any public street or right-of-way within or bordering upon any commercial/business district of the City, at *Page 79 
any time during the day. The operation of any such radio, receiving set, stereo, 'boom box,' musical instrument, phonograph, sound amplifying equipment or other machine or device for the producing or reproducing of sound either stationary or mobile at any time in the jurisdiction of this city in such a manner as to be plainly audible outside a radius of fifty (50) feet from the noise making device in any part, premise, structure, office, business or vehicle shall be prima facie evidence of a violation of this section.
 "(b) Yelling, shouting, singing, etc. Yelling, shouting, hooting, whistling or singing on the public streets or in the public parks at any time or place so as to annoy or disturb the peace, quiet, comfort or repose of any law enforcement official or other individual of normal sensibilities outside of a radius of fifty (50) feet of the noise nuisance or which exceeds the residential decibel levels listed in subsection (a) of this section, 62 decibels (dbA) during the hours of 10:00 p.m. to 7:00 a.m. and 70 decibels (dbA) during the hours of 7:01 a.m. to 9:59 p.m., at any time in any park, premise, structure, office, vehicle, etc. shall be a violation of municipal law.
". . . .
 "(f) Special Noise Permit. Any special event or construction site which is not affiliated with the City of Mobile, or any department or division thereof, shall be required to register any 'special noise' with the Mobile Police Department, Traffic Division, and complete a 'special noise permit' application. There shall be no fee for this permit. No organization shall be allowed to violate the provisions of this noise regulation law at any time or at any place within the jurisdiction of the city, except by obtaining a 'special noise' variance from the City Council. All 'special noise' variances shall be in writing and be dated at least twenty-four (24) hours prior to the event, etc. in question.
 "(g) Standard. Any noise in the City which disturbs the peace, quiet, comfort, repose and exceeds community standards for noise of any individual of normal sensibilities, including law enforcement officials, and is plainly audible outside of a radius of fifty (50) feet from the noise making device; or, additionally, the following standards shall establish a prima facie case of noise nuisance: noise in such a manner which: (a) exceeds sixty-two (62) decibels (dbA) at any property line within any residential district of the City or any public street or right-ofway within or bordering upon any residential district within the City during the hours of 10:00 p.m. until 7:00 a.m.; (b) exceeds seventy (70) decibels (dbA) during the hours of 7:01 a.m. until 9:59 p.m. within any residential area of the City, and (c) exceeds eighty (80) decibels (dbA) within any commercial/business district of the City, or any public street or right-of-way within or bordering upon any commercial/business district of the City, at any time during the day shall be a violation of this municipal law.
 "2) Any person found guilty of violating any of the provisions of this ordinance shall be punished as prescribed in Chapter 1, Article II, Division 2, City Code of the City of Mobile, Alabama (1991), with a fine of $70.00 plus court costs, or by community service for a period not exceeding six (6) months, or by both fine and imprisonment, and/or community service at the discretion of the judge."
On December 13, 1995, at approximately 5:00 p.m., the appellant was preaching on the sidewalk of Dr. Martin Luther King Avenue near its intersection with Monday Street. He was using an amplifier to increase the volume of his voice. Because he had previously been cited for violation of the noise ordinance, the appellant was monitoring his speech with a decibel meter in an attempt to comply with the decibel limitations set forth in the ordinance.
Two Mobile Police Department officers were sent by their supervisor from the nearby police substation to check out a "loud noise disturbance." This was based solely on the complaint of their supervising officer since no one in the area had filed a complaint, although testimony indicated that on other occasions people had complained about the appellant's preaching. When the officers approached the appellant, they asked him if *Page 80 
he had a permit. The appellant explained that he was using a decibel meter to remain below the prescribed decibel limits of the ordinance, and he offered to let them use the meter to verify this fact. However, the officers did not have any training in the use of decibel meters, and they refused to use his meter to verify his statement. Instead, they charged the appellant with violating the noise ordinance because he could be heard at a distance of fifty feet. According to testimony, the City had previously determined it would be impractical to try to implement the use of decibel meters, and therefore followed a policy to base charges for violation of the noise ordinance on the alternative measure of being heard at over fifty feet. The arresting officer never actually testified that the noise annoyed or disturbed him, and was of the opinion that the appellant violated the noise ordinance because he could be heard over fifty feet away.
The appellant argues that § 39-96 is unconstitutionally overbroad, and that it violates his due process rights under Article 1, §§ 6 and 13, of the Alabama Constitution of 1901, and under the Fifth and Fourteenth Amendments of the United States Constitution. An ordinance is overbroad "if in its reach it prohibits constitutionally protected conduct." Grayned v.City of Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294, 2302,33 L.Ed.2d 222 (1972). When an ordinance is overbroad, the right to due process is violated. Ross Neely Express, Inc. v. AlabamaDepartment of Environmental Management, 437 So.2d 82 (Ala. 1983).
Although a municipality may enact ordinances to protect a public forum from excessive noise, such regulation must be narrowly tailored to serve a significant government interest.Ward v. Rock Against Racism, 491 U.S. 781, 800, 109 S.Ct. 2746,2758-59, 105 L.Ed.2d 661 (1989). "Statutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Ross Neely Express, 437 So.2d at 85. Further, when the courts balance First Amendment rights with legitimate community interests protected by an antinoise ordinance, the First Amendment freedoms are to be given a "preferred position," Saia v. New York, 334 U.S. 558, 562,68 S.Ct. 1148, 1150-51, 92 L.Ed. 1574 (1948).
We have previously addressed the constitutionality of municipal antinoise ordinances in Moore v. City of Gulf Shores,542 So.2d 322 (Ala.Cr.App. 1988), and Campa v. City ofBirmingham, 662 So.2d 917 (Ala.Cr.App. 1993), writ quashed,662 So.2d 919 (Ala. 1995). In both of those cases, we found the ordinances to be overbroad because they did not contain reasonable time, place, and manner restrictions. In Campa, we suggested that the problem could be resolved through "a more narrowly tailored antinoise ordinance prohibiting or limiting unwarranted intrusions into the homes of the city residents . . . that specifies the decibels above which the sound is prohibited and/or the hours at which time sounds above certain decibels are prohibited." Id. at 919. The Alabama Supreme Court quashed the writ of certiorari in Campa, but noted that, "This Court, in quashing the writ is not to be understood as agreeing with the dicta with respect to the curative suggestions made in the opinion of the Court of Criminal Appeals." Campa v. City ofBirmingham, 662 So.2d 919 (Ala. 1995).
Portions of the Mobile antinoise ordinance specify the times that noise of specific decibel levels is permitted in certain areas. However, the question of whether those decibel restrictions are reasonable as to time, place, and manner is not directly before this court because decibel levels are not actually used to determine whether there is a violation of the ordinance. Subsection 1(a) provides that a person using some form of amplification equipment can violate the ordinance by causing noise above the decibel standards, or by disturbing a police officer or other individual with a "louder volume than is necessary" at a distance not to exceed 50 feet. Similar alternate standards apply for unamplified forms of speech under subsection (b). Also, in subsection 1(g), the "standard" is again listed as decibel levels, or at such a level that it disturbs a police officer or other individual, that it "exceeds community standards for noise," and is plainly audible at 50 feet.
We do not address the reasonableness of the decibel restrictions because they are an *Page 81 
alternate standard that is not used by the City of Mobile. The standard before us for consideration is whether a police officer is disturbed or annoyed at a noise audible at fifty feet. In fact, subsection (a) provides that if the sound is merely "plainly audible" at a distance of 50 feet, it is prima facie evidence of a violation of the ordinance, which seems to remove or negate the requirement that anyone be annoyed or disturbed by the noise. This restriction is even more broad than those at issue in Moore v. City of Gulf Shores,542 So.2d 322 (Ala.Cr.App. 1988), and Campa v. City of Birmingham,662 So.2d 917 (Ala.Cr.App. 1993), in that, if one does not have a prior permit, the Mobile ordinance is an absolute prohibition of any amplified sound that is plainly audible at greater than fifty feet, anywhere in the City and at any time of day or night. This sweeping restriction of sound is not narrowly drawn, and restricts constitutionally protected speech "beyond the point necessary to accomplish the objective for which the ordinance was created." Moore, 542 So.2d at 323. Based on our holdings in Moore and Campa, we find the Mobile antinoise ordinance to be unconstitutionally overbroad because the standard implemented by the city regulates without reasonable reference to time, place, and manner, and because it regulates constitutionally protected speech more broadly than necessary to achieve the governmental interest in regulating noise.
We are aware of the difficulty involved with drafting an antinoise ordinance that does not inappropriately infringe upon constitutionally protected freedoms, particularly the freedom of speech and the free exercise of religion. Although we do not address the appellant's other arguments against the constitutionality of the statute, we note that this ordinance is vulnerable to additional constitutional attacks other than those we discussed in this opinion. While we recognize the legitimate interest of the City in regulating noise, it is important that the City not infringe upon constitutionally protected speech in doing so. In Campa, we suggested that antinoise ordinances specify the decibel levels above which sound was prohibited and the hours of prohibited sound. However, it appears that such a system may present difficulties in practical application. Further, while the specification of decibel levels and hours of use is probably the best means of enacting a reasonable time, place, and manner restriction, such a system would not necessarily rid an ordinance of other constitutional infirmities.
Because of these concerns and because this is the third time we have found a municipal antinoise ordinance unconstitutional, we make an additional recommendation based on the antinoise ordinance of Honolulu, Hawai'i. In State v. Ewing, 81 Haw. 156,914 P.2d 549 (Haw.Ct.App. 1996), the Hawai'i Intermediate Court of Appeals reviewed the Honolulu "Boom Box Law." The ordinance in question in Ewing contained an "intent and purpose" section that removed the constitutional problems that would have otherwise existed under that regulation. The "intent and purpose" section of the Honolulu ordinance stated:
 " 'There has been an alarming increase in the frequency and volume of noise from the many portable sound reproducing devices available today, such as portable radios, tape recorders, and cassette players.
 " 'It is, therefore, the intent of this ordinance to strike an appropriate balance between the right of individuals to obtain information and derive pleasure by listening to radios and other devices, and the right of the public to a peaceful and healthful environment. It is not the intent of this legislation to interfere unduly with freedom of speech or religion by regulating the initial production or amplification of sound. Thus, the direct amplification of the human voice or music through the use of "bull horns" or amplifiers is not regulated hereby.' "
81 Haw. at 165, n. 12, 914 P.2d at 558 n. 12 (quoting Honolulu Ordinance 90-26).
We recommend the use of similar exclusionary language in conjunction with reasonable time, place, and manner restrictions to help avoid the numerous constitutional problems that arise in antinoise ordinances such as the one involved in this case.
Because we hold the Mobile antinoise ordinance unconstitutional for being overbroad, *Page 82 
we need not address the appellant's other arguments. The appellant's conviction is hereby reversed, and a judgment is rendered in his favor.
REVERSED AND JUDGMENT RENDERED.
All Judges concur.