**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000020
09-APR-2026
07:52 AM
Dkt. 108 SO**

NO. CAAP-24-0000020

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

RAYLANI F. LUPTON, Petitioner-Appellee, v.
KEITH D. KARDASH, Respondent-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DSS-23-0000865)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and Guidry, JJ.)

Self-represented Respondent-Appellant Keith D. Kardash
(**Kardash**) appeals from the Amended Injunction Against Harassment
(**Amended Injunction**), entered on December 18, 2023, by the
District Court of the First Circuit, Honolulu Division (**District
Court**).[1] Following a bench trial, the District Court enjoined
Kardash from, among other things, contacting, threatening, or
harassing his neighbor, self-represented Petitioner-Appellee
Raylani F. Lupton (**Lupton**) for a period of three years.[2]

On appeal, Kardash appears to contend that the District
Court erred in finding that he engaged in harassment against
Lupton pursuant to Hawaii Revised Statutes (**HRS**) § 604-10.5,

---

[1] The Honorable Chris A.K. Thomas presided.

[2] In a September 19, 2025 filing, Kardash asserts that Lupton sold
her residence and moved. He does not assert that his appeal is moot, instead
requesting "an expedited ruling in [his] favor with attorney fees and costs."

where:  (1) Lupton and Kardash testified that they have not communicated with each other in over five years; (2) Lupton's trial Exhibits A through K did not support her allegations of harassment; (3) the Honolulu Police Commission (**HPC**) allegedly sustained Kardash's complaint against Honolulu Police Department Officer Eric Hokama (**Officer Hokama**); (4) Kardash's floodlights serve a legitimate purpose; and (5) the court mistakenly relied on Moysa v. Davies, No. 28753, 2009 WL 1178659 (Haw. App. May 4, 2009) (SDO), vacated in part, 2009 WL 3166784, at *2 (Haw. Oct. 2, 2009) (SDO), in finding that Kardash harassed Lupton.[3]

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we resolve Kardash's contentions as follows and affirm.

(1), (2), and (4) Kardash appears to contend that he could not have engaged in harassment under HRS § 604-10.5 because he and Lupton have not communicated with each other in over five years; various exhibits Lupton presented at trial did not support her allegations of harassment;[4] and certain alleged conduct served a legitimate purpose.

Under HRS § 604-10.5(a)(2) (2016), the district court "shall" grant an injunction prohibiting the respondent from harassing the petitioner if "the court finds by clear and convincing evidence that" the respondent engaged in an "intentional or knowing course of conduct directed at [the petitioner] that seriously alarm[ed] or disturb[ed] consistently

---

[3]     Kardash's opening brief fails to comply in numerous material respects with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b).  In particular, Kardash fails to provide: (1) a "concise statement of the points of error set forth in separately numbered paragraphs[,]" as required by HRAP Rule 28(b)(4); and (2) a statement of "where in the record the alleged error[s were] objected to or the manner in which the alleged error[s were] brought to the attention of the court[,]" as required by HRAP Rule 28(b)(4)(iii).  In addition, the argument section is conclusory and fails to provide citations to relevant authorities.  HRAP Rule 28(b)(7).  Nevertheless, Hawaiʻi appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012) (quoting Morgan v. Plan. Dep't, Cnty. of Kauai, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004)).  We thus address Kardash's arguments to the extent discernible.

[4]     Kardash was represented by counsel at trial.

or continually bother[ed] the [petitioner], and that serve[d] no legitimate purpose; provided that such course of conduct would cause a reasonable person to suffer emotional distress." See Luat v. Cacho, 92 Hawaiʻi 330, 340-41, 991 P.2d 840, 850-51 (App. 1999). "[T]he type of harassment that the courts are mandated to restrain or enjoin under paragraph (2) [of HRS § 604-10.5(a)] involves . . . systematic and continuous intimidation that stops short of assault or threats[.]" Id. at 342, 991 P.2d at 852. Although the respondent's course of conduct must be "directed at" the petitioner, the statute's plain language encompasses forms of conduct that may seriously alarm or disturb the petitioner, and does not restrict such conduct to face-to-face interactions or direct communications between the parties. HRS § 604-10.5(a); see, e.g., Dung v. Ching, No. CAAP-14-0000425, 2015 WL 3936910, at *2 (Haw. App. June 25, 2015) (affirming injunction against harassment based on respondent's conduct in "systematically and continuously mov[ing petitioner's] tires, potted plants, and sawhorses out of the easement; toss[ing] roof shingles into [petitioner's] yard, and caus[ing petitioner's] dogs to bark by taking photos of them from the easement").

Whether there was substantial evidence to support an injunction against harassment is reviewed under the "clearly erroneous standard." Bailey v. Sanchez, 92 Hawaiʻi 312, 316 n.6, 990 P.2d 1194, 1198 n.6 (App. 1999). In addition, HRS § 604-10.5(g) requires that the clear and convincing standard of proof be applied in determining whether conduct rises to the level of "harassment," as defined in paragraph (a). On appeal, we apply the clearly erroneous standard as follows:

> When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a *reasonable factfinder* could have found it *highly probable* that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.

In re JK, 149 Hawaiʻi 400, 409-10, 491 P.3d 1179, 1188-89 (App.

2021) (quoting Conservatorship of O.B., 470 P.3d 41, 55 (Cal. 2020)).

On March 25, 2024, the District Court entered its Findings of Facts, Conclusions of Law and Order (**FOFs/COLs**). Although Kardash argues that certain exhibits presented at trial were not relevant (see infra), he does not specifically challenge any of the FOFs. They are therefore binding on appeal. See Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 458, 40 P.3d 73, 81 (2002) (unchallenged findings of fact are binding on appeal). The FOFs detailed a long history of conflict between Kardash and Lupton, with Lupton previously obtaining a temporary restraining order (**TRO**) in June 2023, the parties reaching an agreement in mediation, Kardash resuming the alleged harassment when the TRO was dissolved, and Lupton then filing the petition in this case. The uncontested FOFs further stated:

> 25. [Lupton] testified that after [Kardash] moved in [Kardash] installed security floodlights which were directly aimed into [Lupton]'s residence and were continually kept on during hours of darkness ([Lupton]'s Exhibits "D", "G" and "H").
>
> 26. [Lupton] testified that the effect of the security floodlights from [Kardash]'s home caused [Lupton]'s bedroom to be lit up which makes it extremely difficult for [Lupton] to sleep at night ([Lupton]'s Exhibit "I"). [Lupton] testified that she asked [Kardash] at the outset if he could direct his security floodlights so that it was not pointed directly into her home and [Kardash] replied that [Lupton] should "buy some black out curtains."
>
> . . . .
>
> 32. [Lupton] testified that [Kardash]'s extremely loud piano playing would sometimes last for 3 to 4 hours and would occur at all times of the day and night to include 7:00 am in the mornings on holidays and as late at night as 10:30 and 11:00 pm.
>
> 33. [Lupton] testified that she worked at home remotely during the pandemic and that her work required the constant and consistent use of her telephone. Callers commented that they could not hear [Lupton] clearly over the telephone because of [Kardash]'s piano playing in the background and consequently, [Lupton] was called back to work at the office and could not work remotely.
>
> 34. [Lupton] testified that [Kardash] started to display caricatures, cartoons and photographs that depicted contextual messages to the neighbors that were posted either on a wooden pole or attached and taped to the City & County grey trash bin . . . and/or blue recycle bin located on [Kardash]'s property and facing the public roadway.

35. [Lupton] testified that the caricatures and cartoons included content that contained implicit graphic sexual depictions and some that depicted firearms and were violent in nature.

36. [Lupton] testified that she became aware from her neighbors that [Kardash] referred to her as "Jabba the Hutt" based on her physical appearance, of which several of these caricatures depicted.

37. [Lupton] was also of the belief that [Kardash] also referred to [Lupton] as a pig and that several of the caricatures included the face of a pig with her hairdo . . . . ([Lupton]'s Exhibits "E" and "F").

. . . .

39. [Lupton] testified that on June 19, 2023, [Kardash] displayed a picture of [Lupton] and her minor daughter on the City & County grey trash bin located on [Kardash]'s property and facing the public roadway, and labeled the photo of [Lupton] as "Karen". . . .

. . . .

41. Based on the content of her testimony and demeanor while testifying, the Court deemed [Lupton]'s testimony credible.

The FOFs next described the testimony of witness and neighbor Jerre Psak, which corroborated Lupton's testimony and was found to be credible by the District Court. The FOFs also recounted Kardash's testimony, in which he contradicted Lupton's testimony and offered various explanations for his actions. The court found that "[b]ased on the court's observation and [Kardash]'s demeanor in court, . . . [Kardash]'s testimony contradicting the allegations of [Lupton] are not credible."

The District Court further found:

66. As a result of [Kardash]'s consistent and continual unremitting intentional acts, [Lupton] felt that her safety and well-being were physically threatened.

67. [Kardash]'s repeated and continual unremitting intentional acts seriously alarmed and continually bothered [Lupton].

68. [Kardash]'s repeated and continual unremitting intentional acts directed at [Lupton] served no legitimate purpose.

69. As a result of [Kardash]'s consistent and continual unremitting intentional acts, [Lupton], a reasonable person, suffered emotional distress.

The court concluded, "[b]ased on the relevant and credible evidence, . . . [Lupton] established at trial, by a

clear and convincing standard, that harassment as defined in [HRS §] 604-10.5(a)(2) did exist." The court entered the Amended Injunction with special conditions, including that: (1) "No noise, music, piano, television, stereo, or sound reproduction device shall be heard 50 or more feet away[,]" measured from the point where the sound is audible to Kardash's residence or to the sound source if not within the residence (**Special Condition 1**); (2) "Kardash will cease and desist from making statements with the intent to harass[,]" which statements "shall not [be made] to a third party, or [by] displaying any photographs, caricatures or cartoons regarding [Lupton,]" referencing as examples Lupton's trial Exhibits C, E, and F (**Special Condition 2**); and (3) "Kardash shall not direct or shine his residential floodlights into the home and property of . . . Lupton" (**Special Condition 3**).

Kardash contends that Lupton's Exhibits A through K, which included, among other things, photographs depicting the allegedly harassing floodlights, caricatures and cartoons, "fail[ed] to prove harassment" or were otherwise not relevant. As to the exhibits' relevance, Kardash fails to state where in the record the alleged errors occurred and were objected to and fails to provide a quotation of the grounds urged for each objection. See HRCP Rule 28(b)(4). The relevance arguments are therefore disregarded.[5/] See id. We address the sufficiency of the evidence below.

Based on our review of the record as a whole, we conclude there is substantial evidence from which the District Court could reasonably have found it highly probable that Kardash engaged in an intentional or knowing course of conduct directed at Lupton that served no legitimate purpose and constituted harassment under HRS § 604-10.5(a)(2). The District Court did not clearly err in making this determination.

---

[5/] In any event, Exhibits A through K appear to have been relevant to the issues raised in the case. See Hawaiʻi Rules of Evidence Rule 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

In challenging the evidentiary value of Lupton's Exhibits A through K, Kardash argues the weight of the evidence, ignoring the District Court's express findings that the testimony of Lupton and Psak was credible, and the testimony of Kardash was not. In arguing that his floodlights served a legitimate purpose, Kardash similarly ignores Lupton and Psak's testimony that the lights were aimed directly into Lupton's residence, and the court's finding that Kardash's "intentional acts directed at [Lupton] served no legitimate purpose." As discussed above, we will not pass on the credibility of a witness or the weight of the evidence. See JK, 149 Hawaiʻi at 409-10, 491 P.3d at 1188-89. Substantial evidence supports the District Court's determination that Kardash engaged in harassment as defined in HRS § 604-10.5(a)(2).

(3) In FOF 61, the District Court noted that "[Kardash] filed a complaint against Officer Hokama with the [HPC] based on his belief that Officer Hokama has an intimate relationship with [Lupton] and is taking unlawful action against him because of that bias." Kardash now asserts that on February 28, 2024, the HPC "sustained" his complaint.

The alleged HPC action is not part of the record and cannot be considered by this court in this appeal. See HRAP Rule 10; Alford v. City & Cnty. of Honolulu, 109 Hawaiʻi 14, 25 n.18, 122 P.3d 809, 820 n.18 (2005) ("References . . . not part of the record on appeal cannot be considered. This is a violation of HRAP Rule 10 . . . .").

(4) Kardash appears to contend that the District Court mistakenly relied on Moysa, 2009 WL 1178659, in finding that he harassed Lupton. In Moysa, this court affirmed in part and vacated in part an order granting an injunction against harassment. Specifically, this court affirmed the order with regard to a "special condition 1" that prohibited the respondents from "play[ing] any music, sermons, or anything else on a television, stereo, other sound reproduction device such that the sound can be heard thirty (30) feet or more away" (the **noise**

**restriction**).[6] <u>Id.</u> at *1. This court vacated the order with regard to a "special condition 2" that prohibited the respondents from making any statements to any third party regarding the petitioners except in limited circumstances involving a homeowners' association. <u>Id.</u> at *2. The Hawaiʻi Supreme Court vacated this court's decision as to the noise restriction, concluding that this court lacked jurisdiction to decide the issue, due to an untimely appeal. 2009 WL 3166784, at *1-*2.

In any event, Kardash contends that because the piano <u>produces</u> rather than <u>reproduces</u> sound, this court's decision in <u>Moysa</u> regarding the noise restriction (presumably to the extent it has persuasive value) does not support the finding of harassment in this case. We are not persuaded by this distinction. The relevant evidence here was that Kardash played the piano at "an extremely loud level" for extended periods "at all times of the day and night" as part of an intentional course of harassing conduct directed at Lupton, *i.e.*, the issue was the volume and timing of the loud sound emanating from Kardash's property, not its source or content. <u>See</u> <u>State v. Ewing</u>, 81 Hawaiʻi 156, 164, 914 P.2d 549, 557 (App. 1996) (holding that a Honolulu ordinance that prohibited playing a device for sound reproduction from a vehicle at a volume audible from 30 feet from the source of the sound, was not overbroad so as to infringe upon free speech because it "does not regulate the content of the sound from the reproducing device."). Hawaiʻi law supports the finding of harassment in these circumstances.[7]

---

[6] We held that this provision did not violate the respondents' right to free speech because it did not restrict the content of the sound, but rather its volume. 2009 WL 3166784, at *1.

[7] In a November 8, 2024 motion to stay enforcement of the Amended Injunction, Kardash asserted that he "[was] confused as to what would violate Special Conditions 1, 2 and 3 . . . . ." This court denied the motion in a November 29, 2024 order. Then-Acting Chief Judge Leonard concurred in the decision to deny a stay of enforcement of Special Conditions 1 and 3, but dissented as to Special Condition 2, concluding it appeared vague and ambiguous, as well as overbroad. Then-Associate Judge Nakasone concurred in the decision to deny the stay motion based on its failure to meet certain requirements for a stay, but agreed with the dissent's position regarding Special Condition 2.

In his November 29, 2024 opening brief, Kardash does not argue
(continued...)

For the reasons discussed above, the December 18, 2023 Amended Injunction is affirmed.

DATED: Honolulu, Hawaiʻi, April 9, 2026.

On the briefs:

Keith D. Kardash,
Self-represented Respondent-
Appellant.

Raylani F. Lupton,
Self-represented Petitioner-
Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge

---

[7] (...continued)
that Special Condition 2 of the Amended Injunction is vague, ambiguous, or overbroad. We therefore do not address the issue in this summary disposition order. See HRAP Rule 28(b)(4), (7).