772 So.2d 994 (2000)
John A. HERNANDEZ, Jr., et al.
v.
James Wayne RICHARD.
No. 00471-CA.
Court of Appeal of Louisiana, Third Circuit.
December 6, 2000.
Susan Carol Severance, Gachassin Law Firm, Lafayette, LA, Counsel for Plaintiff/Appellant: John A. Hernandez, Jr., Patricia Ducote Hernandez.
Jarvis Jerome Claiborne, Attorney at Law, Opelousas, LA, Counsel for Defendant/Appellee: James Wayne Richard.
*995 John Ashby Hernandez, Jr., Attorney at Law, Carencro, LA, Counsel for Defendant/Appellee: John A. Hernandez, Jr., Patricia Ducote Hernandez.
James Wayne Richard, in Proper Person, Grand Coteau, LA, Defendant/Appellee.
Court composed of Honorable BILLIE COLOMBARO WOODARD, Honorable MICHAEL G. SULLIVAN, and Honorable GLENN B. GREMILLION.
WOODARD, Judge.
This is the case of the barking Beagles of Grand Coteau. Mr. John A. Hernandez filed suit to stop Mr. Wayne Richard's Beagles from barking. The two are neighbors, and Mr. Richard keeps a group of Beagles outside, on his property. The trial court denied a temporary injunction, which Mr. Hernandez filed during the proceedings. The legal issue is whether the barking produces frequent or long continued noise, which disturbs the comfort or repose of any person in the vicinity, causing real damages instead of a mere inconvenience. Finding that Mr. Hernandez introduced more than ample evidence to justify the issuance of a temporary injunction, we reverse.

* * * * * *
Mr. Hernandez purchased a home located within the municipal limits of the Town of Grand Coteau, St. Landry Parish, Louisiana, on December 19, 1997. Unbeknownst to him, located approximately 250 feet away from his new home, Mr. Richard, a Grand Coteau resident of twenty years, maintained on his property, an average of at least ten to twelve Beagles, in an outdoor pen. Mr. Richard used the Beagles mainly for hunting, but he also sold some, which he had trained, for $200.00 each.
Mr. Hernandez soon complained of the noise emanating from Mr. Richard's property. First, he attempted to discuss the matter with Mr. Richard. However, the dialogue reached a dead-end, and he resorted to calling the local law enforcement for help. In fact, the Grand Coteau police department's logs reflect countless telephone calls which Mr. Hernandez made, complaining of Mr. Richard's dogs. Finding the local police un-cooperative in his request to have Mr. Richard abate the barking, Mr. Hernandez filed the instant suit, alleging that Mr. Richard violated Article 79 of the Town of Grand Coteau's municipal ordinance, and requested that the trial court issue a permanent injunction and award him damages. He also filed a motion for a preliminary injunction on October 8, 1999. The hearing on the motion for preliminary injunction was originally fixed for the morning of November 5, 1999, but per the parties' agreement, it was refixed for November 10, 1999. Later that morning, having yet to receive a formal answer, Mr. Hernandez presented the trial court with a preliminary default judgment, which the court entered in its minutes. The hearing on the preliminary injunction started on November 10, 1999, but due to the large number of witnesses, after presentation of Mr. Hernandez's case in chief, the trial court continued the trial, setting a reconvening date for November 30, 1999. After it adjourned the preliminary injunction hearing's first day and Mr. Richard had left the courtroom, Mr. Hernandez filed a motion to confirm the default judgment, which the trial court took under advisement and denied on November 16, 1999. Mr. Richard filed an answer regarding the damage claim as well as the preliminary and permanent injunctions on November 29, 1999.
The trial court reconvened for the second day of the preliminary injunction hearing on December 9, 1999, following which it denied Mr. Hernandez's preliminary injunction, holding that he failed to show that Mr. Richard had violated the town ordinance. Mr. Hernandez appeals.

DEFAULT JUDGMENT
Mr. Hernandez claims that the trial court erred when it denied his motion to confirm his preliminary default judgment.
*996 Specifying the time frame within which an answer may be filed, La.Code Civ.P. art. 1001 states that "[a] defendant shall file his answer within fifteen days after service of citation upon him, except as otherwise provided by law." Applying to default judgments, La. Code Civ.P. art. 1701(A) states that "[i]f a defendant in the principal or incidental demand fails to answer within the time prescribed by law, judgment by default may be entered against him." Further, La.Code Civ.P. art. 1702 specifies in relevant part, that:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
. . . .
B. (2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering the judgment.
In the case sub judice, the trial court denied Mr. Hernandez's motion to confirm the default judgment and allowed the preliminary injunction to proceed on its merits in a judgment signed on November 16, 1999. Mr. Hernandez did not apply for supervisory writs and, thus, never obtained the default judgment's confirmation. Mr. Richard filed an answer on November 29, 1999. It is a well-settled principle that any procedural action, resulting in depriving another party of the right to defend oneself in court, should be strictly construed. In Martin v. Martin,[1] the first circuit went so far as holding that filing an answer after a default judgment has been orally confirmed, but prior to its signing, nullifies the judgment. In this instant case, Mr. Richard answered the petition, and the default judgment confirmation never occurred. Accordingly, we affirm the trial court's decision on this point.

NOISE ORDINANCE VIOLATION
Mr. Hernandez asserts that the trial court erred when it denied his preliminary injunction; specifically, when it found that he did not show that Mr. Richard's dogs barked frequently enough to constitute a violation of Article 79 of the Grand Coteau ordinance.
To show entitlement to a preliminary injunction, a person must show the existence of a resulting irreparable injury, loss, or damage.[2] In the instant case, Mr. Hernandez urges that the noise, which these Beagles generated, caused deafening, aggravating, annoying, and irritating racket which interfered with his reasonable use and enjoyment of his property. He states that it deprived him, his wife, and his daughter of their sleep, which affected their ability to function in their daily professional activities.
Relevant to this issue, La.Civ.Code art. 667 provides, in part, that:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
Further, La.Civ.Code art. 668 states that:
Although one be not at liberty to make any work by which his neighbor's building may be damaged, yet everyone has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
*997 Additionally, La.Civ.Code art. 669 specifies that:
If the works or material for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place.
In addition to smoke and nauseous smell, this article has been interpreted to include noises, among other nuisances.[3] Ultimately, "the determination of the existence of a nuisance is a question of fact."[4]
In the instant case, the Town of Grand Coteau enacted ordinance Article 79, which provides, in relevant part, the following:
(1) Unnecessary noise prohibited. It shall be unlawful for any person to make, continue, or cause to be made or continued any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, piece or safety of others, within the corporate limits.
. . . .
(d) Animals, birds, etc. The keeping of any animal, bird or fowl which by causing frequent or long continued noise shall disturb the comfort or repose of any person in the vicinity.
In its reasons for judgment, when denying Mr. Hernandez's motion for temporary injunction, the trial court stated:
The court is satisfied that the dogs bark from time to time, especially when the town whistle blows at twelve noon and 6:00 o'clock P.M. The court is also satisfied that the dogs have barked on occasions at night for at least thirty (30) minutes at a time.
However, the Court is not satisfied at this time that Mr. Richard's dogs have violated the Town of Grand Coteau's town ordinance.
The ordinance is somewhat vague and not specific as to the definition of frequent and long continued noises. The ordinance should be revised or rewritten by the Town Counsel of Grand Coteau.
The dogs do bark in the neighborhood. The court is not satisfied in this preliminary injunction that Defendant's dogs bark frequently or long continued [sic] as defined in the town ordinance.
(Emphasis added.)
We find error in the trial court's decision. Our civil code provides that "[w]hen the language of the law is susceptible of having different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."[5] When there are several laws on the same subject matter, they must be interpreted in reference to each other.[6] In a nuisance litigation, whether under the statutes above or our well-settled jurisprudence, the determining factor of an actionable nuisance is whether it causes real damages as opposed to a mere inconvenience. And when considering the issue, our courts must weigh the reasonableness of the conduct under the light of the circumstances of each case;[7] namely, appraise factors pertaining to the neighborhood's character, the degree of intrusion, and the neighbor's health and safety.[8] Accordingly, the issue, which the trial court should have considered, is whether Mr. Richard's barking dogs created an actionable real damage, as opposed to a mere inconvenience, under *998 the precepts set forth in the town ordinance.
After a thorough review of the record, together with the attached audiotaped and videotaped exhibits, we must find that Mr. Hernandez has more than amply supported his claim with objective evidence.
The record reflects that, both, Mr. Hernandez' and Mr. Richard's properties are approximately 250 feet apart and located within the Town of Grand Coteau's municipal limits. It is not disputed that the dogs, whose number averages from ten to twelve, bark every day, at least when the town whistle blows, around noon and at 6:00 p.m.
Moreover, during trial, Mr. Hernandez testified that:
Please understand that these dogs bark every day, sometimes 5:00 in the morning, sometimes for five minutes, sometimes for five hours, sometimes all day. And it's a cold day in July when they don't bark. They bark at the whistle, they bark at the possums, they bark at the dogs, they bark at the neighbors, they bark at people, they bark at goats.... They bark at everything. They bark on Christmas day, they bark on Thanksgiving, they bark on Easter. It's impossible to live next to that noises. [sic]
. . . .
They will react to stray dogs. They will react to stray cats. They will react to walking dogs unleashed. So depending on the weather, the full moon, the wind, ruffling the leaves they'll react. So it could be for a twenty-four hour period not necessarily continuous without a stop but there might be intervals of five minutes or a few hours or not.
Additionally, Mr. Hernandez maintains that the noise is so loud that he can hear it from his backyard, inside his home, and bedroom. His wife, Ms. Patricia Ducote Hernandez, and his daughter, Ms. Nicole Hernandez, corroborated his testimony. Nicole went as far as testifying that on occasion, she has to study and sleep with earplugs and even then, she can distinctively hear the dogs barking. Further, Mr. Scott Poiencot, a police officer with the city of Abbeville, Louisiana, also Nicole's boyfriend, testified that he has been to the Hernandez's home several times, heard the dogs barking, and found the noise to be very annoying. He contended that, on occasion, the barking was so loud that he had to retreat inside the Hernandez' home to carry on an ongoing conversation. He contended that he has witnessed the dogs barking every time he goes to the Hernandez' residence at night, which amounts to approximately ten to twenty times within a six-month period preceding the hearing.
Mr. Anthony James Fontenot, a private investigator, which Mr. Hernandez hired, testified that, on September 29, 1999, he could hear the dogs barking from inside the Hernandez' master bedroom and added that he could not have slept with such a noise. Mr. Christopher Rubin, another private investigator, testified that he visited Mr. Richard and noticed seventeen to eighteen Beagles. At that time, Mr. Richard informed him that he had three Beagles for sale.
Several officers responding to Mr. Hernandez' calls confirmed that the noise was loud. Officer Raymond Earl Simmons, now the Town of Grand Coteau's Chief of Police, testified that he responded to several of Mr. Hernandez' calls. More specifically, he recalled an October 14, 1998 complaint, to which he responded at 12:20 p.m. He stated that he could hear dogs barking, from inside his vehicle, at a four-way stop located approximately 400 feet from Mr. Richard's house. In similar circumstances, on September 21, 1999 at approximately 11:50 p.m., Officer Noel reported that he could hear Mr. Richard's dogs barking from the municipal's post office, located more than 500 feet from Mr. Richard's home. Officer Danny Clay Hardy attested that he responded to several of Mr. Hernandez' calls, and on occasions, he *999 went inside his home and could hear the dogs barking. On February 20, 1999, at 1:15 a.m., he went to Mr. Richard's home to have him make the Beagles stop barking at a stray dog, which had found his way into Mr. Richard's backyard.
Ms. Dorothy Guidry, Mr. Richard's most direct neighbor of more than twenty years, testified that Mr. Richard's dogs do bark but professed that it did not bother her.
Finally, in his testimony, Mr. Richard did not seriously contest that his dogs do, in fact, bark. He stated:
I can tell you when they're gonna bark, 12:00 o'clock, 6:00 o'clock, and when I drive in the yard when I get back from work to feed, and again if I get them ready to take them hunting. Like if I take about five and load up, well the rest in the pen is gonna holler because they know they want to go run.
He also explained that when a female dog is in heat, the other male dogs bark louder. He acknowledged that the passage of stray dogs or dogs on a leash will also make them bark. He admitted that the same can be said when an ambulance, a police car, or a fire truck drives by his home. He conceded that they would also bark when he works in his yard, when one of his dogs escapes out of its cage, and when strangers walk near his house. He specified that his dogs have "keen noses" and bark when smelling a foreign presence. However, he defended his dogs, saying that they are no different from other dogs in the neighborhood, which may bark under the same circumstances.
If all of this evidence, including Mr. Richard's own admissions, are not enough for one to be convinced of the extraordinary, piercing, blaring sounds, one only need to listen to the audio/video tapes in evidence. No more needs to be said.
Although we feel sympathetic to Mr. Richard's passion for his dogs, the evidence clearly reflects that their barking in no way can be compared to that of simply one, or even, two or three dogs barking. Twelve to eighteen Beagles with healthy lungs expressing themselves in concert can only be described as a cacophony, not to be confused with a symphony. The evidence also demonstrates that their barking satisfies the "frequent or long continued noise" statutory requirement and unreasonably disturbs Mr. Hernandez' comfort, repose, and reasonable enjoyment of his property. Additionally, because of the number of dogs kept on his property, Mr. Richard does not take them inside his home, as a reasonable neighbor would do when one dog barks uncontrollably.
Accordingly, we find that the trial court erred when denying Mr. Hernandez' motion for temporary injunction, and we reverse.

CONCLUSION
The trial court erred when it held that the noise, generated by Mr. Richard's barking Beagles, did not violate the Town of Grand Coteau's Ordinance Article 79. We reverse its judgment and cast Mr. Richard with the costs of the appeal.
REVERSED.
NOTES
[1] 95-2557 (La.App. 1 Cir. 9/27/96); 680 So.2d 759, writ denied, 96-2622 (La.12/13/96); 692 So.2d 1065.
[2] La.Code Civ.P. art. 3601.
[3] Pinello v. Reed, 559 So.2d 988 (La.App. 4 Cir.1990).
[4] Begnaud v. Camel Contractors, Inc., 98-207, p. 6 (La.App. 3 Cir. 10/28/98); 721 So.2d 550, 554, writ denied, 98-2948 (La.2/5/99); 738 So.2d 1.
[5] La.Civ.Code art. 10.
[6] La.Civ.Code art. 13.
[7] Begnaud, 721 So.2d 550.
[8] Id.