THOMAS P. DALEY, Judge.
| ^Defendant, Placide Jumonville, Jr., appeals a judgment granting the City of Kenner’s Petition for Permanent Injunc *576 tion against him, ruling that he is permanently enjoined from violating several ordinances in the City of Kenner Code of Ordinances relative to trash, debris, excessively high grass, and the condition of the fence and garage at residential property located at 50 Granada, Driftwood Subdivision, in Kenner. Mr. Jumonville appeals, arguing several Assignments of Error:
1. The trial court erred in finding that Jumonville was the owner of the property, and erred when it denied his Motion for Directed Verdict;
2. The trial court erred in granting the permanent injunction against defendant because plaintiffs claims have prescribed or have been abandoned pursuant to LSA-C.C. arts. 781-782;
3. The trial court erred in allowing plaintiff to expand the pleading to allege Code violations that were not pleaded;
4. The trial court erred in finding sufficient evidence of violations under
Code of Ordinances Section 5-86(a) and Section 9 ½ — 7(3);
|s5. The trial court erred in sustaining plaintiff City of Kenner’s objections to the admissibility of evidence regarding the pending case in the 24th JDC and the testimony of Mr. Jumonville regarding the condition of the fence; and
6. The trial court erred in granting the permanent injunction against defendant because the alleged violations did not exist at the time of trial.
The record shows that the City of Ken-ner filed its Petition for Permanent Injunction in First Parish Court on February 23, 2005, contending that Mr. Jumonville was in violation of City of Kenner Ordinance 5-86(a), by not maintaining his fences and all accessory structures, including detached garages and sheds, in structurally sound condition and in good repair. The Petition also alleged a violation of Ordinance 9½ - 7(3), by
... permitting the growth of grass or weeds upon the property and/or upon the area abutting said property between the front lot line and the street, at a height of more than seven (7) inches, and by permitting the deleterious or unhealthful growth or trash, debris, refuse, discharge [discarded] or noxious matter on his property.
Trial was held on April 12, 2005. At the close of plaintiffs case, Mr. Jumonville moved for a directed verdict, arguing that he was not the owner of the property. The Motion was denied. After the close of the defense’s case, the trial court ruled in favor of the City of Kenner, issuing a judgment enjoining Mr. Jumonville from violating the particular ordinances, and giving him thirty (30) days in which to comply.
After a thorough consideration of the record, we affirm the judgment.
This Court takes judicial notice of the extensive history of litigation between these parties, both in state and federal court, regarding numerous legal violations concerning the condition of the house on this property. In City of Kenner v. Jumonville, 97-125 (La.App. 5 Cir. 8/27/97), 701 So.2d 223,[1] this Court affirmed |4a district court judgment that ordered the Jumonvilles to complete renovations on this property according to a Consent Judgment confected between the City of Kenner and the Jumonvilles. In that same opinion, this Court affirmed two rulings of the trial court holding the Jumon- *577 villes in contempt of court for failure to comply -with the Consent Judgment. This opinion reveals that the Jumonvilles purchased the house in 1987 and performed sporadic renovations until 1993, when they applied for a building permit to renovate the house at 50 Granada. In 1995, the City of Kenner first sued the Jumonvilles for their failure to proceed with the renovations in accordance with the building permit. The parties entered into the above mentioned Consent Judgment in 1996, which set forth various schedules by which the renovations would proceed and also established deadlines when certain phases would be completed. The contempt judgments and further litigation resulted when the Jumonvilles continually failed to comply with the Consent Judgment.
In City of Kenner v. Jumonville, 00-1696 (La.App. 5 Cir. 4/11/01), 793 So.2d 574 (unpublished opinion), the Jumonvilles appealed a judgment of the district court ordering them to pay fines in the amount of $37,950.00 into the registry of the court, for their failure to complete renovations to the home by a new deadline of January 3, 2000, that was reached via mediation in U.S. District Court.[2] This Court affirmed, finding that the only issue before it was the calculation of the fines, all other issues raised by the Jumonvilles on appeal to be res judicata. It is noteworthy that in that case, Mrs. Jumonville argued that she should not have been assessed fines for contempt by the state district court since she had since transferred her interest in the property to her husband and co-defendant, Placide Jumonville. This Court held that Mrs. Jumonville’s transfer of her interest in the | .^property to Mr. Jumonville, after she had entered into the state Consent Judgment, did not relieve her of her obligations arising from that judgment.
The photographic evidence introduced in the instant case shows that as of the trial date in this case, the renovations at the Jumonville home at 50 Granada have not yet been completed. The interior pictures show that the house remains uninhabitable, some 13 years after the Jumonvilles acquired their building permit and 10 years after the entry of the Consent Judgment.

ASSIGNMENTS OF ERROR

In defendant’s first Assignment of Error, he argues that the trial court erred in denying his Motion for Directed Verdict because the trial court failed to prove that he was the owner of the property cited for the violations of the ordinances. In defendant’s Answer, he alleged that he was not the owner of the property at 50 Granada Drive.
During the plaintiffs case, counsel for Mr. Jumonville entered into evidence a document entitled Act of Donation, whereby Mr. Jumonville purported to donate this property to his son, Placide Jumon-ville, III. The Act of Donation was dated September 22, 2004, but was not recorded in the conveyance records of Jefferson Parish until April 7, 2005, which was five days prior to trial, well after the alleged violations of the Kenner City Ordinances, and likewise, well after suit was filed in February of 2005.
Mr. Patrick Norris, a Code Enforcement Officer who testified for the City of Ken-ner, stated that he checked the property’s ownership record with the Assessor’s Office in Gretna approximately two weeks prior to trial. '
*578 The trial court denied the Motion for Directed Verdict, noting that until the Act of Donation was filed into the public records, it was not effective as to third | ^parties.[3] The trial judge further found that the dates of the alleged violations were clearly prior to the recordation date of the Act of Donation, while Mr. Jumon-ville was the record owner of the property. The trial court noted that Mr. Jumonville did not file a Declinatory Exception.
We see no error in the trial court’s denial of the Motion for Directed Verdict. Mr. Jumonville clearly owned the property at the time of the violations, when the citations were issued, and the time suit was filed. Injunction is an appropriate remedy to prevent future violations of city ordinances. Hernandez v. Richard, 2000-471 (La.App. 3 Cir. 12/6/00), 772 So.2d 994.
In his case, Mr. Jumonville admitted that he had an “interest” in this property and that he was the person who maintained the property and responded to citations regarding the grass height and trash, since his son, to whom he donated the property, lived in China or somewhere in Far East. As between Mr. Jumonville and his son, ownership passed in September of 2004, yet Mr. Jumonville, the father, clearly is the party who responded to and remedied the citations received after that date and which were the basis for this suit. Clearly Mr. Jumonville’s testimony revealed that he is the “agent” for his son, who is now the record owner of the property.
Next, Mr. Jumonville argues that the Judgment was in error because the City of Kenner’s claims have prescribed or been abandoned. Defendant cites Civil Code articles 781 and 782, pertaining to building restrictions. Defendant also claims that the testimonies of Mrs. Black, the Kenner City Councilwoman for the district, and Mr. Norris reflect that the City of Kenner had no noticeable violations at 50 Granada for over two years.
|7Mr. Jumonville has mischaracterized the case and the evidence. Mr. Jumonville and the property at 50 Granada were cited for violations of City of Kenner Ordinances, not building restrictions. Further, the witnesses did not state that more than two years had elapsed since the City of Kenner had noticeable violations at this property. The witnesses clearly stated that the property was last cited in February of 2005 for the grass height. Mr. Jumonville acknowledged receiving this citation in February of 2005, after which he arranged for the grass to be cut. Photographs entered into evidence at trial, identified by Mr. Norris and taken less than a week prior to trial, depict other violations described below.
The record is clear that the City of Kenner has not abandoned any of its claims to have Mr. Jumonville maintain this property, nor have such claims prescribed. The record and the prior litigation noted above show Kenner’s great diligence to have Mr. Jumonville comply with various judgments and ordinances in this matter, as it likewise shows Mr. Jumon-ville’s persistently obstructionist conduct.
Next, defendant argues that the trial court erred in allowing plaintiff to expand the pleading to allege Code violations that were not pleaded. Specifically, he argues that the trial court erred in admitting evidence regarding trash on the interior of the house not covered in the specific City of Kenner Ordinances for which he received a citation and which were pled in the Petition.
*579 Our review of the record shows that while Kenner’s witnesses may have discussed trash they saw in the interior of the home, the pleadings were not expanded. The judgment against Mr. Jumonville, now on appeal, does not order him to remove any trash from the interior of his property. The judgment specifically orders him to comply with Kenner Code of Ordinances 5-86(a) and 9½—7(3), and orders him to “not [permit] the deleterious or unhealthful growth or |strash, debris, refuse, discharge [discarded] or noxious matter on his property.” In addition, the trial court’s comments, when it made the oral ruling against Mr. Jumonville, do not reference trash inside the home. Therefore, any testimony or evidence of trash inside the home was not prejudicial to defendant. This Assignment of Error is without merit.
Next, the defendant argues that the trial court erred in finding sufficient evidence of violations under Code of Ordinances Section 5-86(a) and Section 9⅛ -7(3).
Mr. Jumonville argues that the trial court erred in finding that his garage’s lack of a door is a violation of 5-86(a). He argues that under the trial court’s interpretation of that ordinance, people with open carports would be in violation.
This ordinance requires that fences and accessory structures, including detached garages, be maintained in a structurally sound condition and in good repair. What constitutes “structurally sound condition” and “good repair” will necessarily vary with the type of structure cited. Mr. Jumonville compares his garage with an open carport, but this Court finds the comparison is inapplicable because those structures are not similar. Mr. Jumonville’s garage, as evidenced by the photos, is a detached garage, but is fully enclosed with four walls. The pictures entered into evidence do not show an opening through which a vehicle could enter, but shows an open doorway that once had a regular “house” type door, which was missing in the photograph, but had allegedly been replaced immediately prior to trial by a plywood sheet. See in particular Exhibit K-7. Since it is clearly contemplated that this garage have a door in that place, and since Mr. Jumonville testified that, in fact, a door once existed there before it was removed by vandals, the lack of a door or another type of structure to prevent unauthorized entry rendered the garage in violation of the ordinance.
|flThe trial court did not specifically reference the garage or the fence in its oral reasons at the time of its ruling. We note that the trial court’s judgment generally enjoined Mr. Jumonville from violating these ordinances and gave him 30 days within ■ which to comply with the ordinances. The judgment did not penalize him for a specific violation.
Mr. Jumonville next argues that Kenner failed to prove that the fence was not structurally sound and in good condition. Mr. Jumonville specifically references Exhibit K-8. Mr. Jumonville next notes that he has replaced the fence many times due to the sunken street causing erosion and flooding, essentially blaming the City of Kenner for the condition of his fence. Mr. Jumonville testified at length regarding the “dead man” that secures his fence, which he erected sometime in 2004.
Exhibit K-8 shows that a gate in the fence is missing, allowing access to that portion of the lot immediately behind the enclosed garage, where someone has dumped a basketball goal (to which Mr. Jumonville denied ownership). The lack of a gate where one once existed could have constituted the violation, though the trial court does not specifically state this. Oth *580 er evidence of the fence’s noncompliance exists, however.
Mr. Pat Norris, the Code Enforcement Officer for the City of Kenner, testified that he last visited the property the Friday prior to trial. He identified Exhibit K-8, and stated that he was present when the photograph was taken. The picture showed that the fence had been broken and missing between the garage and the neighbor’s property, at the rear of the yard at 50 Granada. It also showed the presence of the discarded basketball goal to which Mr. Jumonville denied ownership. Exhibit K-9, another photograph taken with Mr. Norris present, depicted the fence line running down Gelpi Street southward going towards |1flGranada. Mr. Norris testified that the fence was leaning and not stable; that it was tied with a rope from the fence pole to a piling that was sticking up out of the ground in the rear yard. He testified that the maintenance of the fence was not up to code.
Mr. Jumonville merely argues that his “dead man” arrangement is secure. He did not refute Mr. Norris’s evidence that the fence was leaning. Mr. Norris clearly saw the “dead man” arrangement, yet disagreed that the fence complied with code standards. Mr. Jumonville’s defense in this matter consisted of blaming street flooding for the fence’s condition. We find that the trial court did not err in finding that Mr. Jumonville’s fence’s condition violated Ordinance 5-86(a).
The evidence and testimony clearly show trash and debris on the property. Mr. Jumonville did not deny that a discarded basketball goal lay on his property, nor that other debris, such as old used tires, has been found on his property in the past. Jumonville’s defense was to blame the neighbors. In her cross examination of Mr. Norris, defense counsel wanted to know why Mr. Norris had not asked the next-door neighbors if they owned the goal. Mr. Norris replied that the goal did not have a name and address on it, and since it was located on the Jumonville property, he assumed it belonged to them. Defense counsel also wanted to know why Mr. Norris had not attempted to determine the ownership of other debris located on the property at 50 Granada, such as old tires, since Mr. Jumonville denied owning the debris located on his property. Mr. Jumonville also argued that other neighboring properties were in similar violation. The trial court disallowed this testimony, noting that whether other properties were cited for violations had no bearing on whether Mr. Jumonville’s property was in violation of the cited ordinances.
In This Court finds, as did the trial court, that it is no defense to blame others for the debris on this property. Owners and their agents are responsible to remove debris from their property. Nor is it a defense to claim that other properties may be in violation of ordinances.
Mr. Jumonville argues next that the trial court erred in sustaining the City of Ken-ner’s objection when his counsel asked him if the yard was secured from entry other than unusual criminal activity.[4] Kenner objected on the grounds of relevancy, arguing that this issue went to the case in the 24th JDC, not the instant proceeding, and went beyond the scope of the pleadings. The trial court sustained the objection, finding the line of questioning to be beyond the scope of this proceeding, to which Mrs. Jumonville replied, “All right.” Mr. Jumonville’s counsel was permitted to *581 ask him if the house was secured from entry. We note that elsewhere, Mr. Ju-monville did testify that the fence was in good repair, when he described the “dead man” with which he had secured the fence. There is no merit to this Assignment of Error.
Last, the defendant argues that the trial court erred in rendering a permanent injunction against him because the alleged violations did not exist at the time of trial. On the contrary, this record shows that several violations continued to exist at the time of trial, most notably the condition of the fence, and the location of debris on the property. Mr. Jumonville produced evidence that he had the grass cut immediately prior to trial. The evidence at trial showed that Mr. Jumonville had a clear history of allowing violations to recur, most notably the uncut grass and accumulation of debris and garbage on the property, and would remedy them only in the event of a citation by the City of Kenner. Accordingly, we find that the trial court did not err in issuing the injunction against Mr. Jumonville.
|12We note that Mr. Jumonville repeatedly advanced the “defense” that neighboring properties were also in violation of the ordinances. The trial court was correct in sustaining objections to this sort of testimony. Whether another property is in violation is no defense to the violations found at 50 Granada.
Like the trial court, this Court finds that the issuing of the injunction in this case is only “an affirmation of what a citizen, should be doing anyway.” We also, like the trial court, find it “curious that any citizen would object to agreeing to follow the laws and violate regulations of a city in which they owned property.” The trial court found it “perplexfing] as to why there’s so much incredible effort put forward to defend a code violation notice when the City of Kenner was simply asking for compliance.” It is “not only a civic duty but a legal duty to comply with the rules and regulations of the property.” We agree.
This Court notes that the Kenner Code of Ordinances gives additional remedies to the City of Kenner in the event of continuing violations of Ordinance 9½-7⅛)(3). If violations are not remedied, after the notice requirements of 9½-7(c) are given, the city may proceed to have the necessary work done (9 ½-7®) and charge the owner for the necessary work (9 ½ — 7(f)). If the charges are not paid within a certain time period, the charges shall be included in and form part of the taxes due on the said property by the owner. (9½ — 7(f)).
The judgment is affirmed. All costs are taxed to, defendant.

AFFIRMED.

. writ denied, 97-2890 (La. 1/30/98), 709 So.2d 718, cert. denied, 524 U.S. 953, 118 S.Ct. 2371, 141 L.Ed.2d 739 (1998).

. Eastern District of Louisiana (Jumonville v. City of Kenner, et al., 98-0220 (E.D.La), and 97-1662.)

. LSA-R.S. 9:2721.

. We note that defendant failed to cite in his brief to the page numbers of the record for this Assignment of Error, a violation of Uniform Rules of the Court of Appeal, Rule 2-12.4. This testimony occurred at pp. 137-138.