[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 74 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 75 
Georgette Norman was convicted in the Montgomery Municipal Court of creating a public nuisance by having weeds over 12 inches in height in her yard, a violation of Ordinance No. 37-91, Montgomery Municipal Code. The municipal court fined Norman $30 and ordered her to pay court costs. Norman appealed her conviction to the circuit court and moved to dismiss the charges against her, alleging that Ordinance No. 37-91 was unconstitutional because: (1) it was unconstitutionally vague; (2) it was overbroad; (3) it violated her due process rights; (4) it violated her right to equal protection; (5) it violated her right to free speech; and (6) it violated her Fifth Amendment property rights. The circuit court granted Norman's motion to dismiss, finding that the definition of the term "weed" in the ordinance was unconstitutionally vague and overbroad. This appeal followed.
At the hearing on the motion to dismiss, the City presented the testimony of Johnny Redding, a housing and building inspector for the City of Montgomery. According to Redding, Norman had vegetation and weeds three to four feet high growing next to the street and close around the curb. Redding testified that there was seed rye growing waist-high and next to the street. (R. 17, 29.) Redding also testified that there was other vegetation over 12 inches high in the yard. According to Redding, the area where Norman lived was not zoned for agricultural use.
In an affidavit attached to her motion to dismiss, Norman stated:
 "My yard on the corner of Rosa Parks and Early evolved initially as an attempt to reclaim Rosa Parks Avenue (at least the area on the front and side of my house). My neighborhood is plagued with car-based prostitution. For years I have spent fruitless hours on the phone to 911. Having been told by one policeman, `[W]ell, that is Rosa Parks,' I felt that I needed to assume a stronger `residential' presence, outside the house, in front to possibly curtail the unwanted activity.
 "My yard is a conscious effort on the part of a socially responsible citizen, me. My aim is to create an ecologically sound and economically viable yard management system, which will not pollute or exploit the environment. This system is defined as permaculture (Bill Mollison, Introduction to Permaculture, 1991). Permaculture simply means permanent culture, as `cultures cannot survive without a sustainable base and land use ethic.' Through landfill diversion and recycling I am designing a cultivated ecology teaching garden. Permaculture is a system, by which we can exist by using fewer fossil fuels and more natural resources that are abundant in such a way that we don't continually destroy life on earth. *Page 76 
 "My yard is an act of conservation and restoration. When our Mayor urged us to recycle, I took it to heart. I go beyond the city collection of aluminum cans and I recycle paper, plastic, and steel with regular deliveries to Mount and McInnis as well as harvest the urbanscape by collecting leaves, concrete and tree blow downs for new life/use in my yard. Recycling for me is a way of life. My yard is agriculture in the sense that I have chosen to grow edibles instead of grass. This was done in part in reaction to constant media coverage concerning how most of the food we consume is grown. I have decided, in a very small way, to control some of what I put in my body. The yard has a clear design and plant selection is not arbitrary. All of the plants are selected for compatibility and arranged in beds. Walking paths made from wood chips and duff from trees blown down in storms, that would otherwise be languishing in a landfill, make all plants easily [accessible]. Central to the yard is a grape arbor, which will eventually be a shade room. The yard is enclosed (upon completion) in a concrete wall, made from former sidewalks and driveways, in which roses will be planted in the spring.
 "This yard is also an attempt for me to stay grounded. We, as a people, have become rootless as the television commercial makes the dandelion, and become creatures of immediacy. I believe that some things take time. My yard is going through its `gawky' period as we build the infrastructure. Maybe on one level it serves to teach us that things don't happen overnight. That some things cannot or should not be rushed, i.e., the thrust by our young to be grown. Our society, as most, grew out of an agrarian system based on the rhythms of life. For everything there is a season and every season in its time. Our value system is tied to those rhythms. I value life."
(R. 62-64.)
 I.
The City argues that the circuit court erred in holding that the definition of the term "weed" in Ordinance No. 37-91 was unconstitutionally vague.
 "`"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that proscription. See Kolender, supra; Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).'"
Timmons v. City of Montgomery, 641 So.2d 1263, 1264 (Ala.Cr.App. 1993) (quoting McCorkle v. State, 446 So.2d 684, 685 (Ala.Cr.App. 1983)). However,
 "`"[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for `[i]n most English words and phrases there lurk uncertainties.' Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945)."'" *Page 77 
Sterling v. State, 701 So.2d 71, 73 (Ala.Cr.App. 1997) (quoting Culbreathv. State, 667 So.2d 156, 158 (Ala.Cr.App. 1995), abrogated on other grounds, 717 So.2d 30 (Ala.Cr.App. 1997)).
Ordinance No. 37-91, Article VII, § 1, Montgomery Municipal Code, provides:
 "a. Whenever any such litter or trash or weeds or tall grass over twelve (12) inches in height is found upon private property, the Chief Building Official of the City of Montgomery may declare the same to be a public nuisance and issue a corrective warning notice to the first-time offender in a calendar year period. Subsequent nuisance conditions within the same calendar year by the same person(s) shall result in a citation for the offender(s) to appear before the Municipal Court."
The ordinance defines a weed as "[a] plant of no value, undesirable and usually of rank growth; grass, shrubs, underbrush, and other vegetable growth higher than twelve (12) inches." Ordinance No. 37-91, Article I, § 2.r., Montgomery Municipal Code. Although the definition of the term "weed" is broad, the ordinance provides fair notice to landowners that any plant over 12 inches high may be declared a nuisance. Furthermore, by providing a specific height at which a plant may be declared a nuisance, the ordinance gives city inspectors definite guidelines for enforcing it. See Commonwealth v. Siemel, 686 A.2d 899
(Pa.Commw. 1996), appeal denied, 548 Pa. 661, 698 A.2d 68 (1997) (table) (holding that an ordinance prohibiting "excessive vegetation," which was defined as "any grass, weeds, bushes, brush, saplings or similar vegetation exceeding six inches in height except such as are planted for useful or ornamental purposes," was a valid exercise of police powers and was not unconstitutionally vague); Howard v. City of Lincoln, 243 Neb. 5,497 N.W.2d 53 (1993) (holding that an ordinance imposing a duty on landowners to cut and clear "all weeds or worthless vegetation whenever such weeds or worthless vegetation shall extend more than six (6) inches above the ground" was not unconstitutionally vague even though it did not define the terms "weeds" or "worthless vegetation"); McDonald v. Texas,693 S.W.2d 660 (Tex.App. 1985) (holding that the definition of weeds as "uncultivated vegetation, including but not limited to, grasses of a height in excess of twelve (12) inches" was not unconstitutionally vague as applied); Sobocinski v. City of Williamsport, 13 Pa. Commw. 425,319 A.2d 697 (1974) (holding that an ordinance requiring landowners to keep grass and weeds cut so that they did not exceed six inches in height was not unconstitutionally vague, even though it did not define the words "weeds" and "grass"). Additionally, Redding testified that, in enforcing the ordinance, he looked at the plant growth in relation to the surrounding areas. He also testified that the City does not normally issue citations or warning letters for gardens located in a backyard and maintained in a "neat fashion." (R. 27.) In fact, Redding stated that he informed Norman that she could move her gardening operation into the backyard and that would be acceptable to the City. Based on the clarity of the definition of the term "weed" provided in the ordinance, the guidelines contained in the ordinance, and the limiting construction used by the city inspectors in enforcing the ordinance, we conclude that the definition of the term "weed" is not unconstitutionally vague. Therefore, the circuit court's ruling in this regard was erroneous.
 II.
The City also argues that the circuit court erred in declaring that the *Page 78 
definition of the term "weed" in the ordinance was overbroad.
 "`"The overbreadth doctrine derives from the First Amendment, see Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see e.g., Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214
(1971)."'"
Elston v. State, 687 So.2d 1239, 1244 (Ala.Cr.App. 1996) (quoting McCallv. State, 565 So.2d 1163, 1165 (Ala.Cr.App. 1990)). Norman argues that the ordinance violates her First Amendment right to free speech because she
 "uses her yard and garden as a means of art and of expression. She uses them to demonstrate her concern for her community, to show her desire to revitalize and reclaim a community blighted by crime, and to educate other people about community revitalization, chemical-free living and environmental protection."
(R. 60.)[1] However, when determining whether conduct constitutes speech, so as to be protected by the First Amendment, the United States Supreme Court has noted:
 "While we have rejected `the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea,' United States v. O'Brien, [391 U.S. 367], 376, 88 S.Ct. [1673], 1678, [20 L.Ed.2d 672 (1968)], we have acknowledged that conduct may be `sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments,' Spence [v. Washington, 418 U.S. 405,] 409, 94 S.Ct. [2727,] 2730, [41 L.Ed.2d 842 (1974)].
 "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether `[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.' 418 U.S., at 410-411, 94 S.Ct., at 2730."
Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 2539,105 L.Ed.2d 342 (1989) (emphasis added). Although Norman may have intended to use her yard to send a public message about reclaiming her neighborhood, protecting the environment, and the state of today's society, there is little likelihood that her message would be understood by those who saw three-to four-foot seed rye growing in her front yard and close to the street. Therefore, we conclude that Norman's garden did not have sufficient communicative elements to bring it within the protections afforded by the First Amendment. "`"Since there are no First Amendment rights at stake here, the overbreadth doctrine does not apply."'"Elston, 687 So.2d at 1244 (quoting McCall, supra). Accordingly, the circuit court erred in holding that the definition of the term "weed" in the ordinance was overbroad.
 III.
Because we have concluded that the circuit court erroneously held that the definition of the term "weed" in the ordinance was unconstitutionally vague and overbroad, for the purposes of judicial economy, we will address Norman's remaining *Page 79 
constitutional challenges to the ordinance.
First, Norman argues that the ordinance violates her rights to due process and equal protection. According to Norman, the broad definition of the term "weed" in the ordinance exceeds the City's police power and is arbitrary. "The Due Process Clause is satisfied so long as the law bears a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory. Fowler v. State, 440 So.2d 1195
(Ala.Cr.App. 1983)." Williams v. State, 710 So.2d 1276, 1309
(Ala.Cr.App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997), cert. denied,524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). Furthermore,
 "`"[t]he Equal Protection Clause of the Fourteenth Amendment goes no further than to prohibit invidious discrimination. . . . If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by lawmakers, the Constitution is not offended. . . ."'
 "Goodson v. State, 588 So.2d 509, 514 (Ala.Cr.App. 1991) (quoting State v. Thompson, 133 N.J. Super. 180,336 A.2d 11, 14 (1975))."
May v. State, 710 So.2d 1362, 1365 (Ala.Cr.App. 1997). "`[A]n ordinance which declares as a nuisance and requires the abatement of weeds above a height certain is a reasonable exercise of the police power. Seegenerally 6 McQuillen, Municipal Corporations, 3d ed., § 24.90, 659, 660.'" Commonwealth v. Siemel, 686 A.2d 899, 901 (Pa.Commw. 1996) (quoting Sobocinski, supra, at 700). "It is well settled that the state may legitimately exercise its police powers to advance esthetic values."Members of the City Council of the City Los Angeles v. Taxpayers forVincent, 466 U.S. 789, 805, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984). The Montgomery weed ordinance is a valid exercise of the City's police power. Also, the ordinance was enacted, in part, for aesthetic purposes. This purpose is illustrated by Redding's statement that "I worked a certain area of town, and I tried to keep that area of town neat." (R. 30.) The definition of the term "weed" based on a plant's height is not arbitrary because the height of plants growing in a yard is relevant to the appearance of an area.
Norman also argues that her equal protection rights are being violated because the ordinance is being selectively enforced against her.
 "`[A] defendant who alleges an equal protection violation has the burden of proving the "the existence of purposeful discrimination."' McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987).
 "`This court has previously held that, although no clear standards exist for quantum or type of proof sufficient to illustrate discriminatory enforcement of a statute . . ., three elements must generally be proved: selectivity in enforcement; selectivity that is intentional; and selectivity based upon some invidious or unjustifiable standard such as race, religion, or other arbitrary classification. It is insufficient merely to show that other violators have not been prosecuted, that there has been laxity in enforcement, or that there has been conscious exercise of some selectivity in enforcement.'
 "DeShazo v. City of Huntsville, 416 So.2d 1100, 1103
(Ala.Cr.App. 1982). See also Carroll v. State, 599 So.2d 1243, 1244-45 (Ala.Cr.App. 1992)."
Facion v. State, 627 So.2d 1144, 1145 (Ala.Cr.App. 1993). Norman has not made any *Page 80 
showing that the City's decision to prosecute her was based upon an invidious or unjustifiable standard. Therefore, she has not proved her selective enforcement claim.
Norman also argues that the enforcement of the ordinance resulted in an unconstitutional taking of her private property without just compensation. When determining whether a governmental regulation amounts to a taking, we must determine
 "`1) whether there is a property interest involved; and
 2) whether that property interest has been diminished — in a case like the present one, whether there has been a diminution in the economic viability of the property by the state regulation, or whether state infringement of the private property right was done in a legitimate exercise of Police Power or to advance a legitimate state interest and whether the infringement operates to further that interest.'"
Hunt v. Chemical Waste Management, Inc., 584 So.2d 1367, 1385 (Ala. 1991), rev'd on other grounds, 504 U.S. 334, 112 S.Ct. 2009,119 L.Ed.2d 121 (1992) (citations omitted). Norman has not made any showing that the economic viability of her residential property has been diminished because she cannot cultivate edible plants over 12 inches tall in her front yard. Furthermore, as we previously noted, the weed ordinance is a valid exercise of the City's police power, and the eradication of weeds over 12 inches high serves the City's purposes in enacting the ordinance. Therefore, no taking of Norman's property occurred. However, even if a taking had occurred, the City was not required to compensate Norman. The City required Norman to cut the plants because they constituted a nuisance.
 "[W]hen the property taken is itself a nuisance, so that the authority must act, then that taking would be within the exercise of the police power and would be compensable if it was not achieved in an arbitrary or corrupt manner and did not amount to an abuse of the police power. See, e.g., City of Mobile v. McClure, 221 Ala. 51, 127 So.2d 832 (1930); City of Birmingham v. Graves, 200 Ala. 463, 76 So. 395 (1917)."
Jefferson County v. Southern Natural Gas Co., 621 So.2d 1282, 1288
(Ala. 1993). Therefore, Norman's argument is without merit.
For the foregoing reasons, we hold that the definition of the term "weed" contained in the Montgomery weed ordinance is not vague or overbroad. Therefore, we reverse the circuit court's judgment and remand this case to that court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Long, P.J., and McMillan, Cobb, and Fry, JJ., concur.
[1] Norman raises this as a separate argument in her brief on appeal.