JOINER, Judge.
*1192 Cynthia Pearl Wallen appeals her convictions for six counts of violating Mobile's ordinance prohibiting public nuisances, see § 7-21, Mobile City Code 1991.[1] She was fined $25 for each count and was ordered to pay court costs for one of those convictions (CC-16-4904).
Wallen does not challenge the sufficiency of the evidence against her; thus, only a brief recitation of the facts is necessary here. Just before 5:00 p.m. on March 9, 2016, Officer Corey Tillman, an animal-control officer with the City of Mobile, received an anonymous complaint about multiple dogs barking at Wallen's home located on Staples Road in Mobile. In response to the complaint, Officer Tillman drove to Wallen's home and, per protocol, parked his vehicle across the street in an effort not to disturb the dogs on her property. According to Officer Tillman, as he sat in his vehicle, he heard multiple dogs barking continuously in Wallen's backyard for approximately 10 minutes.
At that point, Officer Tillman got out of his vehicle and went to Wallen's home to speak with her. Wallen answered the door, and Officer Tillman told her why he was there. Specifically, he told her that he had received a complaint about her barking dogs and that he could smell feces and urine from the road. According to Officer Tillman, Wallen told him that she did not think her dogs were a problem and she took him to her backyard so that he could look at them. Officer Tillman testified that he saw 28 dogs in Wallen's backyard that day and that he took pictures of the unsanitary conditions in which they were being kept. He then issued a citation to Wallen for violating Mobile's public-nuisance ordinance.
That same day, Julie Brannon, a realtor in the area, went to list a house for sale that was located behind Wallen's home. As she walked around the property, Brannon heard Wallen's dogs barking and thought that the noise was "overwhelming." (R. 114.) According to Brannon, the noise went on continuously for 30 to 45 minutes while she was there. Brannon further testified that, each time she showed the house to a potential buyer, she heard the dogs barking.
Between 3:30 and 4:00 p.m. on October 21, 2016, Officer Tillman received another anonymous complaint concerning the noises and the smell coming from Wallen's backyard where her dogs were kept. Once again, Officer Tillman drove to Wallen's residence and parked across the street. He waited for 10 minutes before attempting to speak with Wallen, and during that time, he said, her dogs barked nonstop. He tried to speak with Wallen that day, but she was not home. He left her a notice and later mailed the public-nuisance citations issued against her to her home.
On November 30, 2016, Officer Joshua Seals, an animal-control officer with the City of Mobile, received a complaint about dogs barking at Wallen's address. After he arrived at Wallen's residence, Officer Seals stated that he sat in his vehicle and waited for 15 or 20 minutes. During that time, he said he heard "many" dogs barking nonstop. When he went to speak with Wallen *1193 about the noise, she was not at home. He left her a notice to contact animal control and left.
On January 25, 2017, Office Seals received another complaint about barking dogs at Wallen's home. Officer Seals, once again, went to Wallen's home and sat in his vehicle for 15 to 20 minutes listening to the dogs bark. At some point, Officer Seals spoke with Wallen and informed her that he had received a complaint about her dogs barking. According to Officer Seals, Wallen referred him to her attorney.
Between 9:00 a.m. and 10:00 a.m. on February 9, 2017, Officer Tillman received another anonymous complaint concerning the noises and smell coming from Wallen's property. He again observed the dogs barking continuously for 10 minutes. Officer Tillman said that, when he tried to talk to Wallen about the complaint, she was uncooperative and told him to stay away from her property. Officer Tillman issued another citation to Wallen for violating Mobile's public nuisance ordinance.
On March 3, 2017, Officer Joshua Seals received another anonymous complaint about the noise coming from Wallen's property. While sitting in his vehicle across from Wallen's home, Officer Seals heard her dogs barking nonstop for approximately 15 to 20 minutes. He then decided to speak with one of Wallen's neighbors about the noise. At some point during their conversation, Wallen pulled up in her vehicle and began filming Officer Seals. Officer Seals issued Wallen another public-nuisance citation.
Gerald Bates, Jr., testified that he purchased the house adjacent to Wallen's property on November 30, 2016. On January 25, 2017, February 9, 2017, and March 3, 2017, he telephoned animal control to report that Wallen's dogs had been barking nonstop and that he was concerned about the conditions in which they were being kept.
In May 2017, Wallen appeared before the Mobile Circuit Court and entered a plea of not guilty to the multiple charges against her alleging violations of Mobile's public-nuisance ordinance, § 7-21, Mobile City Code, 1991. On June 13, 2017, she filed a motion to dismiss. In her motion, Wallen argued that § 7-21 of the Mobile City Code was unconstitutionally vague, that it violated her due-process rights, and that it failed to provide for reasonable time, place, and manner restrictions. On June 23, 2017, the City of Mobile filed its response in which it argued that Wallen's contentions were without merit. Wallen's motion was ultimately denied.
On September 27, 2017, a jury trial was held. In addition to the testimony discussed above, three of Wallen's neighbors also testified. Claude Jefferson stated that he lived 300 yards away from Wallen and that he had never had any issues with her or with her barking dogs. Jauran Jackson testified that he could hear Wallen's dogs barking whenever he was in his backyard but that they would bark only if someone was with them. Finally, Marjorie Anthony stated that she lived across the street from Wallen and that she was home all day, every day. According to Anthony, although she has heard Wallen's dogs occasionally bark throughout the day, the noises they made had never disturbed her.
Penny McKinney, an employee of the City of Mobile animal shelter, testified that she was called out to Wallen's home twice after receiving complaints about barking dogs. When she responded to the first complaint, she drove to Wallen's home and, as she sat in her vehicle per protocol, she stated that she did not hear any barking. When she responded to the second complaint, she did the same thing and, once again, did not hear any barking.
*1194 Finally, Wallen testified in her own defense. She told the jury that, for 48 years, she had raised and competed in dog shows with her dogs. According to Wallen, the highest number of dogs she had on her property at one time was between 28 and 29, but on average she generally had between 14 and 18 dogs at her home. When asked if she had ever received any noise complaints about her dogs before the first nuisance complaint in March 2016, Wallen stated that she had not.
Following deliberations, the jury found Wallen guilty of six counts of violating Mobile's public-nuisance ordinance, § 7-21(1), Mobile City Code 1991, for the incidents involving her barking dogs.[2] On November 1, 2017, she was ordered to pay a $25 fine for each conviction and was also ordered to pay court costs for one conviction (CC-16-4904). Thereafter, Wallen filed a timely notice of appeal.
I.
Wallen first argues that Mobile's public-nuisance ordinance, § 7-21(1), Mobile City Code 1991, is unconstitutionally overbroad because, she says, it regulates without reference to time, place, and manner. (Wallen's brief, pp. 13-16.) Specifically, Wallen argues that the ordinance fails to: (1) provide a time frame for when it is unlawful for animals to make "disturbing noises;" (2) limit the place or proximity of the barking; and (3) limit the manner in which the animals are or are not allowed to make "habitual noises." Id. For the reasons provided herein, we conclude that this argument is without merit.
In addressing constitutional challenges to statutes and regulations, the Alabama Supreme Court has stated:
" 'Our review of constitutional challenges to legislative enactments is de novo.' Richards v. Izzi, 819 So.2d 25, 29 n. 3 (Ala. 2001). Additionally, acts of the legislature are presumed constitutional. State v. Alabama Mun. Ins. Corp., 730 So.2d 107, 110 (Ala.1998). See also Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425, 428 (Ala. 1999) ('In reviewing the constitutionality of a legislative act, this Court will sustain the act " 'unless it is clear beyond reasonable doubt that it is violative of the fundamental law.' " ' White v. Reynolds Metals Co., 558 So.2d 373, 383 (Ala. 1989) (quoting Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944) ) ). We approach the question of the constitutionality of a legislative act ' " 'with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.' " ' Monroe v. Harco, Inc., 762 So.2d 828, 831 (Ala. 2000) (quoting Moore v. Mobile Infirmary Ass'n, 592 So.2d 156, 159 (Ala. 1991), quoting in turn McAdory, 246 Ala. at 9, 18 So.2d at 815 ).
"Moreover, in order to overcome the presumption of constitutionality, ... the party asserting the unconstitutionality of the Act ... bears the burden 'to show that [the Act] is not constitutional.' Board of Trustees of Employees' Retirement Sys. of Montgomery v. Talley, 291 Ala. 307, 310, 280 So.2d 553, 556 (1973). See also Thorn v. Jefferson County, 375 So.2d 780, 787 (Ala. 1979) ('It is the law, *1195 of course, that a party attacking a statute has the burden of overcoming the presumption of constitutionality....')."
State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala. 2006). Additionally, the Alabama Supreme Court has also stated that "[s]tatutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Ross Neely Express, Inc. v. Alabama Dep't of Envtl. Mgmt., 437 So.2d 82, 85 (Ala. 1983). This Court has previously adopted that reasoning. See, e.g., Duffy v. City of Mobile, 709 So.2d 77, 80 (Ala. Crim. App. 1997) (stating that a statute or an ordinance is unconstitutionally overbroad "if in its reach it prohibits constitutionally protected conduct").
The City of Mobile's public-nuisance ordinance, § 7-21(1), Mobile City Code, 1991, provides, in pertinent part:
"It shall be unlawful for any person to fail to exercise the necessary care and control to prevent an animal in his or her possession or care from creating a public nuisance. For purposes of this section, an animal is a public nuisance if the animal:
"(1) Habitually makes disturbing noises including, but not limited to crowing, barking, yelping, whining, or other utterances causing unreasonable annoyance or discomfort to others in close proximity to the premises where the animal is kept."
Wallen does not state which, if any, protected freedoms the above ordinance encroaches upon. Therefore, Wallen has failed to establish how the overbreadth doctrine applies in the present case and, as a result, how the City's public-nuisance ordinance is unconstitutional in that respect. Thus, she is not entitled to relief on this claim.
II.
Next, Wallen argues that the City's public-nuisance ordinance is unconstitutionally vague. (Wallen's brief, pp. 17-21.) Specifically, Wallen contends that the ordinance is impermissibly vague on its face because, she says, there are no objective standards for determining whether a dog's barking is "habitual," whether it constitutes a "disturbing noise" or an "unreasonable annoyance," or whether it creates "discomfort to others." Id. For the reasons provided herein, we conclude that this argument is without merit.
In Alabama, the judicial power to declare a statute void for vagueness
" 'should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.' "
Vaughn v. State, 880 So.2d 1178, 1195-96 (Ala. Crim. App. 2003) (quoting Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962) ). " 'To withstand a challenge of vagueness, a statute [or ordinance] must: 1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, and, 2) provide explicit standards to those who apply the laws.' " Moore v. City of Montgomery, 720 So.2d 1030, 1032 (Ala. Crim. App. 1998) (quoting Culbreath v. State, 667 So.2d 156, 158 (Ala. Crim. App. 1995) ). The one challenging a statute or ordinance bears the burden of demonstrating that the statute or ordinance should be declared unconstitutional. State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala. 2006).
When addressing a constitutional challenge to a statute based on the vagueness *1196 doctrine, this Court has previously stated:
" ' " 'As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' Kolender v. Lawson, 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed. 2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that proscription. See Kolender, supra ; Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed. 2d 222 (1972)." '
" Timmons v. City of Montgomery, 641 So.2d 1263, 1264 (Ala. Cr. App. 1993) (quoting McCorkle v. State, 446 So.2d 684, 685 (Ala. Cr. App. 1983) ). However,
" ' " '[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for "[i]n most English words and phrases there lurk uncertainties." Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945).' " '
" Sterling v. State, 701 So.2d 71, 73 (Ala. Cr. App. 1997) (quoting Culbreath v. State, 667 So.2d 156, 158 (Ala. Cr. App. 1995), abrogated on other grounds, 717 So.2d 30 (Ala. Cr. App. 1997) )."
City of Montgomery v. Norman, 816 So.2d 72, 76-77 (Ala. Crim. App. 1999). Finally, the "mere fact that a statute contains a term that is not specifically defined by the statute or as part of the statutory scheme does not automatically render the statute void for vagueness." Lansdell v. State, 25 So.3d 1169, 1176 (Ala. Crim. App. 2007).
In the present case, Wallen was convicted of six counts of violating Mobile's public-nuisance ordinance. That ordinance provides, in pertinent part:
"It shall be unlawful for any person to fail to exercise the necessary care and control to prevent an animal in his or her possession or care from creating a public nuisance. For purposes of this section, an animal is a public nuisance if the animal:
"(1) Habitually makes disturbing noises including, but not limited to crowing, barking, yelping, whining, or other utterances causing unreasonable annoyance or discomfort to others in close proximity to the premises where the animal is kept."
Wallen contends that the above ordinance is unconstitutionally vague because, she says, there are no objective standards for determining whether a dog is barking "habitually" or whether a dog's barking constitutes a "disturbing noise" or an "unreasonable annoyance" and that causes "discomfort to others." (Wallen's brief, pp. 17-21.) We disagree.
In looking at § 7-21(1), Mobile City Code 1991, we conclude that the ordinance is not unconstitutionally vague because it sets forth sufficient standards to place a person of ordinary intelligence on notice of what conduct the ordinance prohibits. Specifically, the ordinance incorporates an objective standard by prohibiting only those "disturbing noises" that are "habitually" made by an animal and that cause "unreasonable annoyance or discomfort" to those in "close proximity to the premises where the animal is kept."
*1197 Here, the ordinance clearly defines those "disturbing noises" as noises that include "but [are] not limited to crowing, barking, yelping, whining or other utterances." § 7-21(1), Mobile City Code 1991 (emphasis added). Additionally, although not defined in the ordinance, a reasonable person would understand that the term "habitually" means something more than incidental barking and indicates that a mere one-time disturbance is not enough to trigger application of the ordinance. Importantly, courts in other jurisdictions have found that use of the word "habit" in a dog-barking statute is not unconstitutionally vague as being beyond the comprehension and understanding of a person of common intelligence. See, e.g., State v. Cole, 18 Ariz.App. 237, 501 P.2d 413, 415 (1972). Finally, with regard to what constitutes an "unreasonable annoyance" and creates "discomfort to others," courts in other jurisdictions have also found such language is not unconstitutionally vague. See, e.g., Hernandez v. Richard, 772 So.2d 994, 997 (La. Ct. App. 2000) (construing noise ordinance to proscribe only objectively "unreasonable" noises to overcome constitutional infirmity of vagueness) and Stephens v. City of Spokane, 312 Fed. Appx. 66 (9th Cir. 2009) (making it an infraction in city code section to allow an animal to "unreasonably" disturb an individual by "habitually barking" is not unconstitutionally vague). Under these circumstances, Mobile's public-nuisance ordinance provides "both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid officials in the enforcement of that proscription" and is not unconstitutionally vague. City of Montgomery v. Norman, 816 So.2d 72, 76-77 (Ala. Crim. App. 1999) (internal quotation marks and citations omitted). Thus, Wallen is not entitled to relief on this claim.
III.
Finally, Wallen argues that § 7-21, Mobile City Code 1991, is unconstitutional as applied to her. (Wallen's brief, pp. 22-24.) Although the argument is not a model of clarity, Wallen appears to argue that the City's public-nuisance ordinance is unconstitutional as applied to her because, she says, it allows her neighbor, Gerald Bates, to continually "harass" her with noise complaints. (Wallen's brief, pp. 24.) According to Wallen, before Bates moved in behind her, she had never received a noise complaint about her dogs. Id. Since he moved in, however, she claims that he has repeatedly "harassed" her with noise complaints despite "knowing full well that dogs bark sometimes." Id. Wallen contends that this violates her constitutional rights and that she should not have been convicted. (Wallen's brief, pp. 22-24.)
This claim fails to satisfy the requirements of Rule 28(a)(10), Ala. R. App. P., which requires that an argument contain "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." "[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority." Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala. Crim. App. 1991). Failure to comply with Rule 28(a)(10) has been deemed a waiver of the issue presented." C.B.D. v. State, 90 So.3d 227, 239 (Ala. Crim. App. 2011).
In its entirety, Wallen's argument reads as follows:
"[Wallen] has owned dogs before she moved into her current home. [Wallen] testified that she has been involved in *1198 the care of dogs since fifteen (15), (16) years of age. [Wallen] moved into the home around 2011. On direct examination [Wallen] was asked: 'Until March 9th of 2016, you've not received any complaints, right?' [Wallen] answered: 'No. So for four (4) years the appellant lived peacefully in tranquility with her neighbors. On March 9, 2016, the realtor, Julie Brannon, came to [Wallen]'s neighborhood to look at and list the property adjacent to [Wallen]'s home. This date is also coincidentally the first time [Wallen] was issued a citation. [Wallen] received the next citation on October 21, 2016; the record does not reflect if this coincides with another visit by Julie Brannon. On November 30, 2017, Gerald Bates, Jr. came out to the adjacent property to measure the water level he testified that he had come out previously to look at the property a few times one of which may have been the October 21, 2016 date. However, on November 30, 2017 when Mr. Bates Jr. was at the property is also the same day the second complaint was issued after and anonymous report. The following three citations January 25, 2017, February 9, 2017 and March 3, 2017, Mr. Bates admitted that he was the one who called Animal Control to complain about [Wallen]'s dogs barking.
"Mr. Bates was aware of the barking dogs before he purchased the house. On direct examination when asked 'So even though you heard the dogs barking that day, you went ahead and made the purchase?' He responded: 'We did. It was just the waterfront, I mean it's affordable waterfront....' Mr. Bates never intended to try to work with [Wallen] to resolve this issue. He testified 'Well, I mean, if there's 29 dogs, trying to get all of them to stop barking at any given time, it's really not going to happen. He didn't say the dogs barked all the time, instead he stated that in his opinion it was impossible to have that many dogs being quiet no matter what [Wallen] did to address the situation. When asked on direct examination: 'Have you ever addressed the issue of her ( [Wallen's] ) dogs barking with her?' Mr. Bates answered 'Actually, no we didn't talk about that.' Even though Mr. Bates had an issue with the dogs before he even purchased the house and self admittedly called Animal Control at least three times, he did not think to once address this issue with [Wallen]. Is this because Mr. Bates never intended to live next door to [Wallen] and her dogs but already decided that he would continue calling Animal Control and use this statute to harass [Wallen] into getting rid of her dogs or moving altogether?
"The statute is unconstitutional as applied to [Wallen] because it allows one neighbor to dictate and harass [Wallen] using the statute. For four (4) years [Wallen] lived peacefully with her neighbors. Julie Brennon a realtor comes to see the adjacent home and the complaints start. Mr. Bates becomes interested in the adjacent property and purchases the property and the additional complaints follow. The effect of this is that one person, knowing full well that the dogs bark sometimes, can come in and disrupt four (4) years of tranquility, while [Wallen] who has lived there peacefully is at the mercy of the whims of her knew neighbor. This is exactly the behavior that the constitutional protections that are being violated are designed to protect against. To allow Mr. Bates with the help of Animal Control to get away with this behavior would be unconscionable."
*1199 (Wallen's brief, pp. 22-24.) Wallen's argument here is nothing more than a conclusory allegation with no citations to any legal authority supporting her claims. As such, it does not comply with the requirements of Rule 28(a)(10), Ala. R. App. P. Thus, it will not be considered by this Court.
Accordingly, the judgment of the circuit court is due to be affirmed.
AFFIRMED.
Windom, P.J., and Welch, Kellum, and Burke, JJ., concur.

Wallen was convicted in the Mobile Municipal Court. She then filed a notice of appeal for a jury trial de novo in the Mobile County Circuit Court. Following a jury trial, Wallen was convicted of six counts of violating the City's ordnance prohibiting public nuisances.

Specifically, Wallen was convicted of five counts of public nuisance for noise related to the dogs on her property in violation of § 7-21(1), Mobile City Code, 1991. See CC-16-4904; CC-17-1020; CC-17-1021; CC-17-1827; and CC-17-1828. She was also convicted of one count of public nuisance for odor related to the dogs on her property in violation of § 7-21(2), Mobile City Code 1991. See CC-17-1830.